STATE OF NEBRASKA, APPELLEE, V. GIZELLE PEARLE GRAVES, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. DONALD LEE ROACH, APPELLANT.
229 N. W. 2d 538

Filed May 15, 1975. Nos. 39831, 39832.

Michael T. Levy, for appellants.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendants, who waived a jury trial, were convicted of unlawful possession of heroin. They were each sentenced to the custody of the Director of Correctional Services for a period of 2 years. They assign as error: (1) The denial of their pretrial motions to suppress tangible incriminating evidence seized by the police during a search pursuant to a warrant; and (2) in sentencing them to the custody of the Director of Correctional Services rather than to a term of probation. We affirm.

The primary question in this case is the validity of a search warrant based on the affidavit of Melvin M. Berney, which stated in pertinent part: "That he has just and reasonable grounds to believe, and does believe, that there is concealed or kept as hereinafter described, the following property, to-wit: Opium or its derivatives, Cocaine, or any other illegally possessed Drugs, and Instruments for the administering of these drugs either home-made or manufactured.

"That said property is concealed or kept in, on, or about the following described place or person, to-wit: 1538 North 18th Street, Omaha Douglas County, Ne-

braska. A two Story, White, Wooden Framed, Single Family Dwelling.

"That said property is under the control or custody of Jessie Brown and/or John Doe and/or Jane Doe.

"That the following are the grounds for issuance of a search warrant for said property and the reasons for his belief, to-wit: On 28 June 1973 Federal Bureau of Investigation agent Vic Harvey telephoned Lt. Jack Swanson of the Omaha Police Division and related that agent Harvey has an informant who has proven their reliability in the past by providing information to the F.B.I. that has proven reliable and accurate and this informant stated that a party name Jessie Brown who lives at 1538 North 18th Street is expecting a large shipment of Heroin. This shipment is supposed to arrive sometime today June 28 1973.

"At about 7:30 P M June 28 1973, F.B.I. agent Harvey telephoned Lt. Swanson again and advised Lt. Swanson that this same reliable informant had just called back and stated that Jessie Brown has received the shipment of Heroin and its in the house at 1538 North 18th Street. Officers of the Omaha Police Division have been conducting an investigation into Jessie Brown of 1538 North 18th Street in connection with his Heroin involvement for about the past two weeks. Through the investigations by the Omaha Police Division and through different officers talking to reliable informants that have provided information to the officers in the past that have led to Felony Narcotics Arrests. These informants and these investigations have led the members of the Omaha Police Division, Vice and Narcotics Unit to believe that Jessie Brown is very active in Heroin dealing in the Omaha area and he was expecting a large shipment of Heroin. Through the information by the F.B.I. informant and the Omaha Police investigation, Officers are of the opinion that concealed inside of 1538 North 18th Street is a quantity of Heroin which is contrary to the laws of the State of Nebraska. Due to the fact that 1538 North

18th Street is a modern dwelling, officers believe that there are toilet facilities inside and if the Police Officers have to announce themselves, the Contraband could be easily destroyed, thus the officers are Requesting that a No Knock Search Warrant be issued."

A search warrant was issued on the basis of the affidavit. A search pursuant to the warrant resulted in the discovery and seizure of heroin and the arrest of the defendants. At the suppression hearing, Lieutenant Swanson, mentioned in the affidavit, verified the information contained in the affidavit, and elaborated on it by adding the information that the F.B.I. informant had been in the house and had seen the heroin in the house.

Defendants' first assignment of error is the overruling of the motion to suppress the evidence. Defendants' motion to suppress is based on Aguilar v. Texas (1964), 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723, and Spinelli v. United States (1969), 393 U. S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637. Aguilar is not in point on the facts. The affidavit there was one short paragraph reciting that the police had received reliable information from a credible person and did believe that narcotics were being kept on the premises to be searched, for sale and use contrary to law. The affidavit in the instant case is much more detailed than in Aguilar. That case is not controlling herein.

While the affidavit in Spinelli was more detailed, it was still held to be inadequate. Spinelli, however, has been seriously undermined by United States v. Harris (1971), 403 U. S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723. As we observed in State v. Rice (1972), 188 Neb. 728, 199 N. W. 2d 480: "A reputable legal scholar has stated that Harris 'appears to go far in the direction of eroding the force of Aguilar and Spinelli.' 45 Conn. B. J., note 51, p. 345." The majority in Harris specifically repudiated Spinelli to the extent that it prohibited the use of a policeman's knowledge of a suspect's reputation. Mr. Justice Burger there said: "We cannot conclude

that a policeman's knowledge of a suspect's reputation —something that policemen frequently know and a factor that impressed such a 'legal technican' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that Spinelli prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation."

If we correctly gauge defendants' attack on the affidavit, it is hinged on their contention that because it did not state the informant had actually seen the heroin in the premises, the affidavit must be suppressed. This is not fatal if the tip is corroborated by other information in the hands of the police and if the tip itself as reflected in the affidavit justifies an inference of personal knowledge. Even in Spinelli, the court said: "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

We held in State v. Glouser (1975), *ante* p. 190, 226 N. W. 2d 328: "For an affidavit based upon a tip from an informant to be sufficient, the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that the narcotics were located where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible."

The affidavit establishes that the informant was credible because he had given reliable information in the past. The police knew that Jessie Brown was active in

heroin in the Omaha area. They knew from other informants he was expecting a large shipment. When the information was communicated to them by the F.B.I. that one of their reliable informants advised that a shipment was arriving for Jesse Brown, it confirmed the information they already had. They had actually been expecting it a week earlier at the same location where the informant told them it would be delivered for cutting. When that same reliable F.B.I. informant communicated the information that the shipment had now actually arrived, and that the heroin was at 1538 North 18th Street, Brown's residence, there was sufficient indicia of reliability to give probable cause for action. As the court said in Harris: "In evaluating the showing of probable cause necessary to support a search warrant, against the Fourth Amendment's prohibition of unreasonable searches and seizures, we would do well to heed the sound admonition of United States v. Ventresca, 380 U. S. 102 (1965):

"'(T)he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.' 380 U. S., at 108.

"Aguilar in no way departed from these sound principles."

The evidence at the suppression hearing established that the informant actually had been in the house and

had seen the heroin. As we said in State v. Rice (1972), 188 Neb. 728, 199 N. W. 2d 480: "The information supplied to a judicial officer issuing an arrest warrant on a sworn complaint may be supplemented by additional information which the arresting officers themselves have or have acquired before the arrest and which is corroborative of the complicity of the arrestee in the crime."

Testimony at the suppression hearing also developed the fact that the police had been informed by reliable informants that when Brown received a shipment of heroin, he used the residence at 1538 North 18th Street for cutting purposes.

We hold that the affidavit for the search warrant was sufficient on the facts in this case. The first report by the informant was that the heroin was expected. The second report, a few hours later, was that it had arrived. Coupled with the known facts on Brown, that the police department had been conducting an investigation of his heroin involvement for the previous 2 weeks, and the further fact that the residence at 1538 North 18th Street had previously been used for cutting purposes, the reports do not have the ring of a "casual rumor circulating in the underworld." Viewed in a common sense light, the magistrate was entitled to infer from the affidavit that the informant was basing his report on something substantial and not mere rumor. The reasonable inference from the affidavit was that the informant had seen the heroin at 1538 North 18th Street. When we consider the other reports received by the police concerning the expected shipment and Brown's general involvement in heroin, probable cause was shown.

Defendants attack the affidavit as being double hearsay. As we said in State v. Glouser (1975), *ante* p. 190, 226 N. W. 2d 328: "An affidavit for a search warrant may be based on hearsay information and need not reflect direct observations of affiant so long as the magistrate is informed of some of the underlying circum-

stances supporting the affiant's conclusion." It is not unusual that an affiant in an affidavit for a search warrant may be communicating information related to him by fellow officers. In United States v. Hill (5th Cir., 1974), 500 F. 2d 315, the court said: "That the tip and reliability of source four were communicated to affiant by another officer is of no decisional moment. * * * Such personal observations of a fellow officer pursuing the same investigation can be presumed reliable. * * * The fact Phillips rather than his fellow officer imparted this particular information to the magistrate in no way attenuates its accuracy or the credibility of the informant."

In United States v. Welebir (4th Cir., 1974), 498 F. 2d 346, the court in note 2, page 349, lays down the rule that the affiant can base his information on information supplied by fellow officers even if it is also based on hearsay. In State v. Howard (1972), 188 Neb. 494, 197 N. W. 2d 641, this court said: "We observe that an affidavit for search warrant is not defective simply because it is based on hearsay, so long as the affidavit discloses a substantial basis for crediting the hearsay. Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697; * * *." The trial court properly denied the defendants' motion to suppress the evidence.

Defendants' next assignment of error is that the District Court committed reversible error and abused its discretion in sentencing the defendants to the custody of the Director of Correctional Services for a period of 2 years rather than sentencing them to a term of probation. In the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal. State v. Flaherty (1975), ante p. 275, 226 N. W. 2d 631. The record here fully supports the action of the District Court. There was no abuse of discretion.

The judgments are affirmed.

AFFIRMED.

CLINTON, J., concurs in the result.

McCOWN, J., dissenting.

The Supreme Court of the United States and this court have consistently held that the validity of a search warrant, such as the one involved here, depends upon the information set out in the affidavit. In State v. LeDent, 185 Neb. 380, 176 N. W. 2d 21, this court said: "In passing on validity of a search warrant the court may consider *only* information brought to the attention of the magistrate. For the affidavit of a tip from an informant to be sufficient the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that the narcotics were located where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible. Affidavits for search warrants must be tested in a common sense, realistic fashion." (Emphasis ours.) The majority opinion here requotes most of that language, reaffirmed in State v. Glouser, *ante* p. 190, 226 N. W. 2d 328, but entirely omits the first sentence of the quotation.

In the case at bar there was ample evidence in the affidavit that the informant was credible, but there was no information as to any "of the underlying circumstances from which the informant concluded that the narcotics were located where he claimed they were." The majority opinion concludes that because apparently more than one informant had told the police that Jessie Brown was expecting a large shipment of heroin, therefore the number of informants justifies an inference of personal knowledge on the part of each of them. I can find no support anywhere for the conclusion that if there is more than one informant the affidavit does not have to reflect any of the underlying circumstances from which any informant concluded that narcotics were located where he claimed they were. If that conclusion were true, any statement by an informant that narcotics were present at any location would be in itself sufficient

to justify an inference of personal knowledge, and remove the necessity of showing any of the underlying circumstances except the previous reliability of the informant. The majority opinion recites that the evidence at the suppression hearing established that the informant actually had been in the house and had seen the heroin. That single fact, if contained in the affidavit, would have made it sufficient, but that information was not in the affidavit.

·· The issue becomes a clearcut one of whether this court may consider *only* information brought to the attention of the magistrate in the complaint and affidavit, or whether that information may be supported and supplemented by additional information not included in the affidavit. It is advisable, particularly in narcotics cases, to avoid any requirement that an affidavit must be so intimately detailed that it may reveal the identity or probable location of an informant. Nevertheless, it is only necessary that an affidavit state the fact that an informant is or has been in a position to observe or know of activities at or around the location involved or by the individuals concerned sufficient to lead the police to reasonably conclude that the information given to them was "more substantial than a casual rumor or an accusation based merely on an individual's general reputation."

· An affidavit for a search warrant such as the one involved here "must be tested and interpreted by magistrates and courts in a common sense and realistic fashion." Any common sense and realistic interpretation of the affidavit in this case demonstrates that the affidavit did not inform the magistrate of any of the underlying circumstances from which the informant concluded that the narcotics were located where he claimed they were. The majority opinion must therefore rest upon the fact that the evidence at the suppression hearing was sufficient to validate an otherwise insufficient affidavit. That conclusion may be entirely appropriate but it

clearly departs from the rules previously followed by the Supreme Court of the United States and by this court. Stripped of excess verbiage, the affidavit here, insofar as "underlying circumstances from which the informant concluded" were concerned, was the same as the affidavit in Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723. That case has not been overruled nor modified on the issue involved here.