Donald ROACH, Petitioner,

v.

Robert PARRATT, Warden, Nebraska Penal and Correctional Complex, Respondent.

Gizelle Pearl GRAVES, Petitioner,

v.

Jacqueline CRAWFORD, Superintendent, Nebraska Center for Women, Respondent.

Civ. Nos. 75–L–114, 75–L–115.

United States District Court, D. Nebraska.

Feb. 18, 1976.

Michael T. Levy, Omaha, Neb., for petitioners.

Ralph H. Gillan, Asst. Atty. Gen. of Neb., for respondents.

DENNEY, District Judge.

These habeas corpus matters come before the Court for decision pursuant to 28 U.S.C. § 2254. The parties have submitted the cases upon the state court record.

Ronald Roach and Gizelle Graves are presently incarcerated in the Nebraska Penal and Correctional Complex and the Nebraska Center for Women, at York, Nebraska, respectively. Petitioners were jointly tried and found guilty by the Douglas County District Court of the crime of possession of heroin. On October 24, 1974, petitioners were sentenced to the custody of the Director of Correctional Services for a period of two years. Petitioners appealed to the Nebraska Supreme Court and the supreme court affirmed. *State v. Graves, State v. Roach*, 193 Neb. 797, 229 N.W.2d 538 (1975) (Clinton, J. concurring; McCown, J. dissenting.) Thereafter, petitioners instituted suits in this Court for writs of habeas corpus on the ground that the affidavit upon which a search warrant was issued failed to establish probable cause for issuance of the search warrant. A brief recitation of the relevant facts surrounding the search is necessary.

Petitioners challenge the legality of a search of a residence at 1538 North 18th Street, Omaha, Nebraska, on the night

of June 28, 1973. The search was conducted by Omaha police officers pursuant to a no-knock search warrant issued by a judge of the Omaha Municipal Court. Prior to June 28, 1973, Officer Melvin M. Berney, of the Omaha Police Division Vice and Narcotics Squad had received two anonymous telephone tips that a person known as J. B. or Johnny Dollar was dealing in heroin. Other narcotics officers had also obtained similar information from various other sources and it was "common knowledge" around the narcotics squad that J. B. was dealing in heroin. On June 20, F. B. I. Agent Vic Harvey informed Lieutenant Swanson, who was in charge of the Omaha Police Vice and Narcotics Squad, that an informant told him that Jesse Brown would receive heroin that weekend and that Brown would prepare it for street sale at 1538 North 18th Street in Omaha. Brown did not receive the heroin on the date indicated. On the morning of June 28, Agent Harvey again contacted Lieutenant Swanson and informed him that a reliable unnamed informant told him that Jesse Brown would receive heroin that day. Later that same night, Agent Harvey called Lieutenant Swanson again and said the same informant had reported that Brown had received the heroin and that it was at 1538 North 18th Street. Lieutenant Swanson then instructed Officer Berney to prepare an affidavit and application for a search warrant. Berney prepared the material and presented it to a Municipal Court judge who authorized the search warrant. Berney did not provide the judge with any information other than that contained in the affidavit. The affidavit read as follows:

On 28 June 1973 Federal Bureau of Investigation agent Vic Harvey telephone [sic] Lt. Jack Swanson of the Omaha Police Division and related that agent Harvey has an informant who has proven their [sic] reliability in the past by providing information to the F. B. I. that has proven reliabile [sic] and accurate and that this informant stated that a party name [sic] Jessie Brown who lives at 1538 North 18th Street is expecting a large shipment of Heroin. This shipment of Heroin is suppose [sic] to arrive sometime today June 28, 1973. At about 7:30 PM June 28, 1973, F. B. I. agent Harvey telephoned Lt. Swanson again and advised Lt. Swanson that this same reliabile [sic] informant had just called back and stated that Jessie Brown has received the shipment of Heroin and its [sic] in the house at 1538 North 18th Street. Officers of the Omaha Police Division have been conducting an investigation into Jessie Brown of 1538 North 18th Street in connection with his Heroin involvement for about the past two weeks. Through the investigations by the Omaha Police Division and through different officers talking to reliable informants that have provided information to the officers in the past that have led the members of the Omaha Police Division, Vice and Narcotics Unit to believe that Jessie Brown is very active in Heroin dealing in the Omaha area and he was expecting a large shipment of Heroin. Through the information by the F. B. I. informant and the Omaha Police investigation, Officers are of the opinion that concealed inside of 1538 North 18th Street is a quantity of Heroin which is contrary to the laws of the State of Nebraska. Due to the fact that 1538 North 18th Street is a modern dwelling, officers believe that there are toilet facilities inside and if the Police Officers have to announce themselves, the Contraband could be easily destroyed; thus the offers are Requesting [sic] that a No Knock Search Warrant be issued.

As soon as they obtained the search warrant, Omaha police officers entered the residence at 1538 North 18th Street about 10:30 P.M. on June 28. Upon arriving on the second floor of the residence, officers found Jessie Brown attempting to flush a brown powdery substance, later identified as heroin, down the toilet. Both petitioners were present in the

house and were arrested with Brown. Police confiscated heroin and some equipment commonly used in the preparation of heroin for street sale.

At the suppression hearing, Lieutenant Swanson verified the information contained in the affidavit and testified, over objection, that the F. B. I. informant had been in the house. The evidence was admitted at trial over petitioners' objections.

Petitioners allege that they are being incarcerated in violation of the United States Constitution because,

> [t]he affidavit upon which the Magistrate relied exclusively in issuing his search warrant did not meet constitutional requirements for issuing the warrant, and, contrary to the finding of the Nebraska Supreme Court in affirming Petitioners' conviction, could not be supplemented by other probable cause foundational information known to the police but never presented to or relied on by the issuing Magistrate.

Petitioners have exhausted state remedies, as required by 28 U.S.C. § 2254(b), by contesting the validity of the search warrant before the Supreme Court of Nebraska.

■ The supreme court rested its finding of validity of the warrant upon information which the police officers had but which was not revealed to the magistrate. The Constitution of the United States cannot properly be interpreted to tolerate the "post hoc ratification" of a police officer's assessment of probable cause by the judiciary. *Rice v. Wolff*, 513 F.2d 1280, 1286 (8th Cir.) *cert. granted*, 422 U.S. 1055, 95 S.Ct. 2677, 45 L.Ed.2d 707 (1975).

> Such a procedure would be contrary to the previous teachings of the Supreme Court as to the policies to be furthered by the warrant requirement of the fourth amendment, and in no way would protect innocent citizens from unreasonable searches by police officers who had erred in assessing the existence of probable cause to search the particular premises. *Id.*

The Supreme Court specifically held in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971):

> Under the cases of this Court an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. See *Aguilar v. Texas*, 378 U.S. 108, 109, n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723. A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless. 401 U.S. at 565, n. 8, 91 S.Ct. at 1035.

It is therefore necessary to view the sufficiency of the affidavit alone in determining the legality of the search warrant.

■ There is no doubt that an affidavit which will support issuance of a warrant "may be based on hearsay information and need not reflect the direct personal observations of the affiant." *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).

■ Simply because the affidavit may have contained what has been characterized as "double" or "triple" hearsay does not by itself make it unworthy of belief. *United States v. Welebir*, 498 F.2d 346, 349, n. 2 (4th Cir. 1974). The fact that this information passed from the unidentified informant through a chain of law enforcement personnel before reaching the affiant does not make it any less reliable than if the affiant had received it directly from the informant. *United States v. McCoy*, 478 F.2d 176, 179 (10th Cir. 1973). The issue in this case, therefore, is "whether the magistrate was given sufficient basis for crediting the informer's tip." *United States v. Marihart*, 472 F.2d 809, 812 (8th Cir. 1972) (en banc), *cert. denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51.

■ In *Aguilar*, the Supreme Court established a two-prong test for determining the credibility of an informer's tip: (1) The magistrate must be given some of the underlying circumstances

from which the informant reached his conclusions; and (2) he must be given some of the underlying circumstances to conclude that the informant was credible or his information was reliable. In *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Supreme Court held that an affidavit deficient under the Aguilar test is sufficient if averments in the affidavit corroborate the information so that it can be fairly said that the tip "is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration[.]" 393 U.S. at 415, 89 S.Ct. at 588.

 It is apparent that the affidavit in this case does not meet the *Aguilar-Spinelli* test. The affidavit stated that the informant had previously furnished the F. B. I. with information that proved to be accurate. The fact that an informant has previously given accurate information may be a sufficient test of his reliability. *McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). It is immaterial that the informant had previously furnished accurate information to the F. B. I. instead of to affiant. When information comes to an affiant through official channels, as here, personal knowledge of reliability of the informant is unnecessary. *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Shipstead*, 433 F.2d 368, 372 (9th Cir. 1970). The first prong of *Aguilar*, on the other hand, has not been satisfied here because the affidavit revealed nothing as to how the informant reached his conclusion that Brown had received the heroin shipment. Nor is the information sufficiently detailed or corroborated to supply as much trustworthiness as if it had satisfied the *Aguilar* test. Other than the informer's conclusion that Brown had heroin at a particular address, no details or specifics were provided from which the judge could have reasonably inferred that the informer acquired his information in a reliable way. The only other information presented to the judge was that police investigations and other reliable police informants had established that Brown was "very active in heroin dealing" and that he was expecting a shipment of heroin. No facts were provided as to how the police or their informants came by this information and no details were supplied from which a magistrate might determine the information was acquired in a reliable way. It is true that one informer's tip may tend to corroborate another informer's tip, *e. g., United States v. Harris, supra; United States v. Marihart, supra*, 472 F.2d at 815. But this Court has been unable to find a case which holds that an insufficient tip may be corroborated by equally insufficient information.

 The State, however, argues that *Aguilar* and *Spinelli* have been seriously undermined by *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), in which a plurality of the Supreme Court indicated it was willing to relax the standards for judging the reliability of informants' tips. *Aguilar* and *Spinelli* have not been overruled and courts are still bound to follow its precedent. In *Harris*, the affiant stated underlying circumstances to support the informant's conclusion but the affidavit was insufficient in failing to aver that the informant was credible or his information was reliable. Chief Justice Burger, relying upon *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), found three reasons for crediting the informant's tip: (1) It purported to relate personal observations of the informant; (2) it recited the accused's reputation for criminal behavior; and (3) the informant's statement was against his penal interest. 403 U.S. at 581, 583, 91 S.Ct. 2075. *See Rice v. Wolff*, 388 F.Supp. 185 at 193 (D.Neb.1974) *affirmed*, 513 F.2d 1280 (8th Cir. 1975). The Court in *Harris* allowed the reputation of the accused and the aforementioned additional factors to cure the failure to aver the informant was reliable. This Court does not understand *Harris* to

mean that the suspect's criminal reputation by itself may corroborate an informant's bare conclusory allegations. *See United States v. Bridges,* 419 F.2d 963 at 966, n. 3 (8th Cir. 1969). The *Aguilar* and *Spinelli* tests were designed to prevent instances where the magistrate's decision was based on rumor or the suspect's reputation.

In the absence of a statement detailing the matter in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. *Spinelli v. United States, supra,* 393 U.S. at 415–16, 89 S.Ct.at 589.

The statement in the affidavit that Brown was known to be active in heroin dealing and that he was expecting a large shipment of heroin in the future was precisely the type of vague, general information that the *Spinelli* test was designed to guard against. The information that was supposed to corroborate the tip was only a bare conclusion without an explanation of how the information was acquired or where it came from. Stripped to its bare essentials, the affidavit contained an informer's conclusion that Brown possessed heroin, corroborated only by Brown's reputation and the conclusion that he was expecting a drug shipment. The "corroborating information" may have been no more substantial than barroom gossip or street rumor. For all the affidavit disclosed, this could have been a situation in which "a mere rumor reported from one unknown source is 'verified' by the same rumor in the mouth of another unknown informant." *United States v. Wong,* 470 F.2d 129, 131 (9th Cir. 1972). The affi-

davit did not contain enough facts to allow the judge to perform his neutral and detached function. Similar conclusory affidavits have been found deficient in *Aguilar v. Texas, supra,* and *Rice v. Wolff, supra.*

Determination of the sufficiency of search warrants presents difficult questions of legal judgment. The Court recognizes that judicial minds can and have differed in the application of the principles of law to a given set of facts, and it does not lightly substitute its judgment for that of the state district and supreme courts. However, the principles of habeas corpus require the federal courts to exercise their independent judgment consistent with the legal principles established by the appellate courts and the Supreme Court of the United States. The Nebraska Supreme Court upheld this search warrant on the basis of testimony presented at the suppression hearing which was not presented to the magistrate at the time the search warrant was issued. If the full facts had been contained in the affidavit, the search warrant would probably have been sufficient to withstand petitioner's challenge. However, the Supreme Court of the United States has consistently held that the validity of a search warrant must be determined from the affidavit alone. This Court recognizes the seriousness of narcotics offenses, but is bound to uphold the basic constitutional rights of citizens. The evidence obtained from the search was seized in violation of the fourth and fourteenth amendments to the Constitution of the United States.

An Order is entered contemporaneously herewith in accordance with the findings delineated herein. Unless the State of Nebraska retries petitioners within ninety (90) days from the date hereof, writs of habeas corpus shall issue.