UNITED STATES of America

v.

Samuel L. EBARE, also known as "Sam", et al., Defendants.

No. 75–CR–86.

United States District Court,
N. D. New York.

June 2, 1976.

Paul R. Shanahan, Syracuse, N.Y., for defendant Ebare.

John R. Rinaldi, Syracuse, N.Y., for defendant D'Agostino.

David B. Weinstein, Auburn, N.Y., for defendant Beach.

Palmiere, Passero & Crimi, by Norman A. Palmiere, Rochester, N.Y., for defendant Grezo.

Pappas & Cox, by C. Andrew Pappas, Syracuse, N.Y., for defendant Czerwinski.

James M. Sullivan, Jr., U. S. Atty., N.D. N.Y., Syracuse, N.Y., by Jeffrey C. Fisher, Special Atty., Dept. of Justice, Binghamton, N.Y., for the United States.

MacMAHON,* District Judge.

Defendants Grezo, Camerano, Czerwinski, and Beach move to suppress all evidence derived from the interception, with court approval, of certain wire communications. Defendant Beach also moves to suppress certain physical items seized pursuant to a search warrant.

The movants, along with co-defendants Ebare and D'Agostino, are charged with conducting an illegal gambling business, in violation of 18 U.S.C. § 1955, and with conspiracy, 18 U.S.C. § 371.

Defendants claim, on two somewhat contradictory theories, that the wiretap evidence must be excluded at trial since the court authorization was defective. First, they contend that the order was issued without probable cause to believe that any individual was either conducting an illegal gambling business or conspiring to commit such an offense. Simultaneously, defendants contend that the application and order failed to identify as targets of the surveillance all persons whom the government had probable cause to believe were involved in the illegal gambling business, as required by Sections 2518(1)(b)(iv) and 2518(4)(a) of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 ("the Act").[1]

Judge Edmund Port signed an order on December 19, 1974 authorizing the interception of wire communications to or from the telephone located at the residence of Joseph D'Agostino, and any wire or oral communications at the home of Samuel Ebare. The

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. See *United States v. Principie,* 531 F.2d 1132 (2 Cir.1976).

government seeks to introduce statements intercepted pursuant to that order on both telephones between December 19, 1974 and January 7, 1975. The order was based on an affidavit of Special Agent Robert Kolevar of the FBI which purports to set forth probable cause to believe that Samuel Ebare, Joseph D'Agostino, Leon Cook, James Colloca, Frank Cali, Richard Michael Beach, and others as yet unknown were involved in an illegal gambling business.

Kolevar recites information from three confidential sources. Source One identifies Ebare as the head man in the gambling operation, D'Agostino as the telephone man with whom Source One placed bets, and Cook as the collection and settle-up man. Kolevar also identifies the telephone at D'Agostino's residence as the number he called to place his bets. Source Two identifies Colloca as a bookmaker who worked as an agent for D'Agostino and Ebare. Source Three conveys information he had obtained from a third party, Source A, a close friend of Source Three and of D'Agostino. Source Three disclosed the identity of Source A to Kolevar.

According to Source A, the Ebare gambling business had revenues in excess of $75,000 per week; there were two telephone men besides D'Agostino; and Beach worked primarily as a bookmaker and collector but took on other responsibilities, at Ebare's direction. Beach also met every week with Ebare, D'Agostino, and others to discuss the administration of the business, including settlement of debts. Both Ebare and Beach were known to use the telephone at the Ebare residence to arrange meetings with customers. Source A said that Cali worked primarily as a collector.

Kolevar's affidavit also contains surveillance reports of meetings between the alleged conspirators, records of the past gambling convictions of Ebare, Cook, and Cali,

and a record of conviction of Beach for grand larceny.

Defendants contend that the affidavit of Kolevar does not establish probable cause to believe that any individual was conducting an illegal gambling operation, or that the telephone at the D'Agostino residence was being used to further that activity, since the information obtained through Sources One and Three was not shown to be reliable.

■ When probable cause is sought to be established through information supplied by a non-disclosed informant, a judge or magistrate must be given sufficient data to enable him to determine whether the information is reliable. This includes the circumstances by which the informant came by his information and the reasons why the individual informant should be trusted.[2] Defendants claim under the second prong of this reliability test that neither Source One nor Source A was shown to be trustworthy.

■ Corroboration of an informant by other sources, although unnamed, supports reliability.[3] The central fact that Ebare was the head of an extensive gambling operation was supplied by all three sources and supports the credibility of each. Moreover, Source One's information that D'Agostino was a bookmaker for Ebare is specifically corroborated by Sources Two and Three.

■ Trustworthiness may also be established if the informant has previously supplied reliable information to law enforcement agencies.[4] Kolevar's affidavit stated that Source One had given information in the past which was accurate and had led to several arrests. Judge Port was, therefore, given sufficient data to assess the reliability of Source One, to determine that there was probable cause to believe that Cook, D'Agostino, and Ebare were engaged in an

---

2. *Spinelli v. United States*, 393, U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

3. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Dunnings*, 425 F.2d 836 (2 Cir.1969).

4. *Jones v. United States, supra; United States v. Sultan*, 463 F.2d 1066, 1069 (2 Cir.1972).

illegal gambling operation, and that bets were being placed through D'Agostino's telephone.

■ Defendants next contend that since the information supplied by Source Three is double hearsay, it is inherently unreliable. Information obtained by one informant from a second unidentified source, however, may be sufficient to support a finding of probable cause if the underlying circumstances are such that the information appears credible.[5]

■ The affidavit states that Source Three had been providing the FBI with information about gambling activities in the Syracuse area for over three years, much of it obtained by Source Three from Source A. That information was accurate and resulted in twenty arrests and four convictions. Considering this history of reliability along with the partial corroboration by Sources One and Two, the Kolevar affidavit contained sufficient data to support the belief that Ebare, Beach, and Cali were involved in illegal gambling activity.

We find, therefore, that there was probable cause to sustain the wiretap order of December 19, 1974.

Defendants' second challenge to the validity of the December order is premised on Title III of the Organized Crime Control Act. The Act requires that an application for authorization to intercept a wire communication must include the identity, if known, of the person who has committed the offense for which the order is sought and whose communications will be intercepted. 18 U.S.C. § 2518(1)(b)(iv).[6] The order authorizing the interception must specify the person, if known, whose communications are to be intercepted. 18 U.S.C. § 2518(4)(a).[7] Defendants contend that since the government had probable cause to believe that Ebare, Beach, Cook, Colloca, Cali, and D'Agostino were involved in the illegal gambling activity, but identified only D'Agostino as the target of the electronic surveillance, the affidavit and interception order were defective and the evidence should be suppressed.[8]

■ General participation in the activity under investigation may not be sufficient to require identification under the Act. The government must also have probable cause to believe that the person will be using the telephone for which the order is sought.[9]

■ In the instant case, the only conspirator who had been linked to the tapped telephone was D'Agostino with whom Source One had placed bets. Both Source One and Source A reported that Ebare did not use the telephone to discuss gambling business in order to insulate himself from being picked up on a wiretap. Colloca and Cook were bookmakers for Ebare who accepted bets through their own telephones. Although Source Two knew that Colloca called D'Agostino about gambling matters, there was no information that the calls were made to the number sought to be intercepted. There was also no information

---

5. *Spinelli v. United States, supra,* 393 U.S. at 425, 89 S.Ct. 584 (White, J., concurring); *United States v. Kleve,* 465 F.2d 187, 192 (8 Cir. 1972); *United States v. Smith,* 462 F.2d 456, 458–460 (8 Cir.1972).

6. "Each application for an order authorizing or approving the interception of a wire or oral communication . . . shall include the following information:
    *   *   *   *   *   *
  (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including . . . (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted. . . ." 18 U.S.C. § 2518(1)(b)(iv).

7. "Each order authorizing or approving the interception of any wire or oral communication shall specify—
  (a) the identity of the person, if known, whose communications are to be intercepted. . . ." 18 U.S.C. § 2518(4)(a).

8. *United States v. Chiarizio,* 525 F.2d 289 (2 Cir.1975); *United States v. Donovan,* 513 F.2d 337, 340–342 (6 Cir. 1975), *cert. granted,* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 310, 44 U.S.L.W. 3462 (U.S. Feb. 23, 1976); *United States v. Moore,* 168 U.S.App.D.C. 227, 513 F.2d 485, 492–494 (1975).

9. *United States v. Martinez,* 498 F.2d 464, 468 (6 Cir.1974); *United States v. Chiarizio,* 388 F.Supp. 858, 872, 874 (D.Conn.1975).

that Beach and Cali, whose primary job was to settle accounts with clients, would use the D'Agostino telephone. It is, therefore, unreasonable to require that the government should have predicted that all alleged conspirators would use the intercepted wire.

The conservative approach of the government in identifying only the individual whose conversations it knew would be intercepted is understandable. If the other participants had been listed as targets and it should later develop that there was no probable cause to assume they would use the particular telephone, the interception would violate the constitution as well as the Act.[10] Moreover, the application and order fully reveal the identities of all individuals whom the government had probable cause to believe were involved in the criminal activity. Since the Act requires that all persons mentioned in the order must be given notice of the wire interception, there was no attempt by the government to evade this requirement.[11]

We find that failure to specify all alleged conspirators as targets of the electronic surveillance did not violate the section of the Act which requires identification of the person whose communications are to be intercepted and does not require suppression of evidence gained as a result of the December 19 order.

Judge Port signed a second order on January 11, 1975 extending the wiretap authorization at the D'Agostino residence. Defendants' challenge to this second order is premised on a suppression of evidence obtained from the December tap and, therefore, must also fail.

■ Defendant Beach moves to suppress certain items found on his person during a warrant-authorized search. Defendant claims that the warrant was defective since it was issued without probable cause.

The affidavit in support of the application for the warrant was made by Agent Kolevar. It contains intercepted conversations between D'Agostino and a man who calls himself "Harpo" about how the betting on a certain game was going. Law enforcement investigators recognized the voice of "Harpo" as belonging to Beach. Moreover, attached to the affidavit and incorporated in it were copies of the two earlier affidavits submitted to Judge Port in support of the wiretap order.

As a result of information obtained through the informants, as well as the physical and electronic surveillance, there was reason to believe that Ebare was head of an extensive gambling business which kept physical records containing betting information regarding individual accounts. Beach, who was identified by Source Three in the first wiretap affidavit as a collector and errand boy for Ebare, could be expected to carry large amounts of cash and records of accounts and debts of those individuals who dealt with the organization. We find, therefore, that there was probable cause to support the search warrant.

Accordingly, defendants' motion to suppress all wiretap evidence is denied. Defendant Beach's motion to suppress items seized pursuant to a search warrant is also denied.

So ordered.

---

10.  *United States v. Principie, supra*, at 1137.

11.  "Within a reasonable time but not later than ninety days after . . . the termination of the period of an order or extension thereof, the issuing . . . judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest

of justice, an inventory which shall include notice of

(1) the fact of the entry of the order or the application;

(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

(3) the fact that during the period wire or oral communications were or were not intercepted." 18 U.S.C. § 2518(8)(d).