[Civ. No. 45392. First Dist., Div. One. Apr. 3, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
WARD ALLEN BINGHAM, Real Party in Interest.

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Richard G. Tullis, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Steven R. Manchester for Real Party in Interest.

## OPINION

**ELKINGTON, J.**—A magistrate issued a warrant authorizing search of the premises of the real party in interest of these proceedings, Ward Allen Bingham, for specified, insured, personal property claimed by him to have been destroyed by fire. Upon execution of the search warrant the property was found in the possession of Bingham, undamaged. He was charged with several insurance-related felonies in the superior court. That court granted his Penal Code section 1538.5 motion to suppress evidence of the subject property. The court, concluding that the search warrant was grounded on *"hearsay upon hearsay"* had held, for that reason *and as a*

*matter of law,* that the fire marshal's affidavit did not establish probable cause according to Fourth Amendment requirements.

Upon the People's petition we issued an alternative writ of mandate for the purpose of inquiring into the validity of the superior court's ruling.

The affidavit before the magistrate was that of Deputy Fire Marshal John R. Stafford of Santa Clara County. It related the following.

The affiant had earned an academic degree in "fire science," and in the course of his duties as fire marshal had investigated the origin of more than 350 fires. He had investigated a fire of a suspicious nature which occurred June 30, 1976, on the premises occupied by Bingham Aviation & Electronics, Inc. which was owned, principally or entirely, by Bingham. During the course of his investigation he learned that, about two weeks before the fire, Bingham had purchased a $250,000 fire insurance policy for coverage of the personal property of his business. He described at length and in detail, his initial 13-day investigation as a result of which (we think reasonably) he formed an "opinion that the fire . . . was intentionally set by human hands."

Bingham made claim under the insurance policy for the value of personal property purportedly destroyed in the fire, in the amount of $168,373.90. Among the items claimed to have been so destroyed were three valuable devices described as a "vello-bind system," a "blue ray machine," and a "faces [or phases] 3 editing system" of the claimed value of $15,000. Referring to the "faces 3 editing system," in a sworn statement accompanying his claim (which was incorporated in the affidavit), Bingham had declared that it was built in part by one John Mason, an engineer, and the rest of it "was handled through a firm called Johnston Associates. . . . They went out and acquired six engineers to do the job."

Also investigating the fire in collaboration with the fire marshal was a Mr. McPherson of the Insurance Crime Prevention Institute. That private corporation, in cooperation with law enforcement officers, "investigates for its members [including Bingham's insurance carrier] suspicious insurance claims." McPherson had reported to the fire marshal, the following information.

McPherson had discussed the case with the engineer, John Mason, who according to Bingham had initially worked on the "faces 3 editing system." Mason told McPherson that he had seen the same device in

Bingham's possession after the fire. Additionally, McPherson informed the fire marshal of the following: He "learned from Mr. Mason that on or about the month of February, 1977 [eight months after the fire], Mr. Mason personally observed Mr. Ward Bingham remove the serial numbers from a velo-bind [*sic*] system. Mr. Mason said that he observed this occur at 374 West Washington, Sunnyvale. Mr. Mason also told Mr. McPherson that on December 29, 1977, he observed in the place where Mr. Ward Bingham now works, Industrial Telephone System Company, the faces 3 editing system that he constructed for Mr. Bingham, the blue ray machine and the velo-bind, . . . Mr. Mason personally knows that the faces 3 editing system that he observed at ITS was the same faces 3 editing system that Johnston Associates . . . also partially constructed." McPherson had also interviewed three of the six Johnston Associates engineers mentioned by Bingham. They told him that the faces 3 editing system was being worked on in the Johnston Associates premises at the time of the fire, and that Bingham had "personally picked the Faces 3 editing system [upon which they had worked] up from Johnston Associates approximately four months after the fire at Bingham Aviation and Electronics."

It will be seen that the information imparted by the four engineers to McPherson was the primary hearsay of the fire marshal's affidavit. And the relaying of that information by McPherson to the fire marshal affiant constituted the "hearsay upon hearsay" found by the superior court to have invalidated the search warrant.

█ We have concluded that such hearsay upon hearsay does *not* necessarily, or as a matter of law, impose a Fourth Amendment taint upon a search warrant based, in whole or in part, upon it. The error of this case was that of the superior court, not of the magistrate whose determination that the fire marshal's affidavit was reasonably supportive of the search warrant, we affirm. Our reasons follow.

█ Probable cause is, of course, reasonable cause. " 'There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances . . . .' " (*People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] [cert. den., 364 U.S. 841 (5 L.Ed.2d 65, 81 S.Ct. 79)].) In respect of affidavits for search warrants, whether they reasonably justify a search "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . Technical requirements of

elaborate specificity once exacted under common law pleadings have no proper place in this area." (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337].)

The guiding authority on the requirements of a search warrant's probable cause is found in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]. California's courts have stated the rule of those cases in this manner: ■ "(1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable." (*Price* v. *Superior Court* (1970) 1 Cal.3d 836, 840 [83 Cal.Rptr. 369, 463 P.2d 721]; *People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].)

In the application of these criteria a magistrate will first determine from the affidavit whether the informant himself may reasonably be deemed reliable. If not, his information will not, at least alone, support a search warrant. When, and if, from the affidavit the informant is reasonably found reliable, the magistrate will then look to the information itself. If it is stated as a matter of the informant's personal knowledge, "in language that is factual rather than conclusionary," it may reasonably be accepted by the magistrate as supportive of the requested search warrant.

■ In passing upon such a determination of the magistrate, a reviewing court (here the superior court and this court) will be bound by this well-known rule that: "[*T*]*he warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony.*" (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; italics added.)

The law has long recognized a rational and practical distinction between informants upon whose information search warrants are sought.

Roughly they may be classed on the one hand as "citizen-informants" acting openly in aid of law enforcement and, on the other, criminally involved or disposed "police-informers," or "mere informers," or "stool pigeons," who for compensation, or revenge, or other reasons of personal advantage, surreptitiously give tips to law enforcement agents about real or imagined criminal activity.

"A 'citizen-informant' is a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. . . . It is reasonable for police officers to act upon the reports of such an observer of criminal activity. . . . [¶] A 'citizen-informant' is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. . . . Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as 'citizen-informants' because they are generally motivated by something other than good citizenship. . . . ▉ Accordingly, in view of this distinction the courts have recognized that the tests of reliability that must be applied to experienced stool pigeons or to persons criminally involved or disposed do not necessarily apply to every private citizen who aids the police." (*People v. Schulle* (1975) 51 Cal.App.3d 809, 814-815 [124 Cal.Rptr. 585], and see authority there collected.) "[A] citizen who observe[s] the commission of a crime [is] more than a mere informer. '[T]ests of reliability that must be applied to experienced stool pigeons do not necessarily apply to every private citizen who aids the police.' " (*Krauss v. Superior Court* (1971) 5 Cal.3d 418, 421-422 [96 Cal.Rptr. 455, 487 P.2d 1023] [overruled on other grounds, *People v. Cook* (1978) 22 Cal.3d 67, 98-99 (148 Cal.Rptr. 605, 583 P.2d 130)].)

Citizen-informants are sometimes said to have a "built-in" credibility. (*United States v. Hunley* (8th Cir. 1977) 567 F.2d 822, 825.) The strict requirement of a showing of reliability and credibility is ordinarily " 'addressed to the particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or witness to a crime.' " (*United States v. Swihart* (6th Cir. 1977) 554 F.2d 264, 268.) And: " 'The essence of reliability may be found in an informant's statement of facts rather than an allegation of mere conclusory suspicion. An informant who alleges he is an "eyewitness" to an actual crime perpetrated demonstrates sufficient reliability of the person.' " (*Cundiff v. United States* (8th Cir. 1974) 501 F.2d 188, 190.)

■ Under these criteria, the four engineers who furnished information to McPherson were patently citizen-informants. They had observed, and reported, evidence of criminal activity, and the magistrate could, and did, reasonably find them reliable.

■ The remaining informant, McPherson, was also of the nature of a citizen-informant without a conceivable purpose to falsify, and he also had acted "openly in aid of law enforcement." (See *People* v. *Schulle, supra,* 51 Cal.App.3d 809, 814; *Krauss* v. *Superior Court, supra,* 5 Cal.3d 418, 421-422.) Moreover, his employment as an arson investigator working in cooperation with law enforcement officers, was of a quasi-public nature. Law enforcement officers, working together on a case, are reasonably "presumed to be reliable, and their statements could properly be relied upon by the magistrate if the original source of the information otherwise satisfies the *Aguilar [Spinelli]* test." (*People* v. *Hill* (1974) 12 Cal.3d 731, 761 [117 Cal.Rptr. 393, 528 P.2d 1] [overruled on other grounds, *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 (135 Cal.Rptr. 786, 558 P.2d 872)]; and see *People* v. *Hogan* (1969) 71 Cal.2d 888, 891 [80 Cal.Rptr. 28, 457 P.2d 868].) This rule is reasonably applicable to informants such as McPherson.

We are brought more closely to the critical issue of the case before us.

■ The United States Supreme Court has consistently held that *hearsay* information will support issuance of a search warrant. "[A]n affidavit [for a search warrant] may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . ." (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 729]; see also *Franks* v. *Delaware* (1978) 438 U.S. 154, 165 [57 L.Ed.2d 667, 678, 98 S.Ct. 2674, 2681]; *McCray* v. *Illinois* (1967) 386 U.S. 300, 304 [18 L.Ed.2d 62, 66-67, 87 S.Ct. 1056]; *United States* v. *Ventresca, supra,* 380 U.S. 102, 110 [13 L.Ed.2d 684, 690].) The same rule, of course, is followed in California. (See *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 840-841.) Indeed the usual search warrant, based on a reliable police informer's or a citizen-informant's information, is *necessarily* founded upon hearsay.

Although the nation's high court appears never to have *expressly* addressed itself to the question whether *double hearsay* will sustain a search warrant, at least twice it has *impliedly* done so. In *United States* v. *Ventresca, supra,* 380 U.S. 102, "investigators" reported criminal activity to other "investigators" who in turn reported it to the affiant. Without *express* consideration of the affidavit's double hearsay, a search warrant

based mainly on that information was affirmed. In *Rugendorf* v. *United States* (1964) 376 U.S. 528 [11 L.Ed.2d 887, 84 S.Ct. 825], a federal law enforcement officer in Alabama had reported information from two Alabama police informers and a police officer, to a Chicago law enforcement officer affiant. Again, without *express* mention of the affidavit's double hearsay nature, a search warrant issued upon it was found valid. In each case the court determined that the critical issue was whether the affidavit met what has come to be known as the above described *Aguilar-Spinelli* test.

It thus appears from the high court's holdings, that whether hearsay or *double hearsay* information of criminal activity will support a search warrant depends not upon terminology or ritualistic formula, but upon the quality and persuasiveness of the information itself.

Lower federal courts appear to be in unanimous accord.

*United States* v. *DiNovo* (7th Cir. 1975) 523 F.2d 197, 200 (cert. den., 423 U.S. 1016 [46 L.Ed.2d 387, 96 S.Ct. 449]): "An affidavit for a search warrant can properly include hearsay based on hearsay provided it contains information 'relating to (1) the reliability of the informant and (2) some knowledge of the underlying facts to support the conclusion that a crime had been committed.' " *United States* v. *Carmichael* (7th Cir. 1973) 489 F.2d 983, 986: "[H]earsay upon hearsay is not inherently defective. . . . [H]earsay based on hearsay is acceptable in this instance as long as the affiant has 'sufficient information so that both levels of hearsay meet the two-pronged test spelled out' in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723, relating to (1) the reliability of the informant and (2) some knowledge of the underlying facts to support the conclusion that a crime had been committed." *United States* v. *Wilson* (7th Cir. 1973) 479 F.2d 936, 941: "If hearsay information is acceptable in arriving at probable cause, and it is, Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), then hearsay based on hearsay should be acceptable as long as the police officer has sufficient information so that both levels of hearsay meet the two-pronged test spelled out in *Aguilar.*" *United States* v. *Charlton* (E.D.Tenn. 1975) 409 F.Supp. 1327, 1331 [affd., 565 F.2d 86; cert. den., 434 U.S. 1070 (55 L.Ed.2d 773, 98 S.Ct. 1253)]: " 'Double hearsay' is not *per se* ineligible to be considered in a probable cause determination. Subject to the limitations described in *Aguilar* and *Spinelli, supra,* such evidence may be considered by the Magistrate." The same rule will sometimes even be applied to "triple hearsay." (*United States* v. *McCoy* (10th Cir. 1973) 478 F.2d 176, 179

[cert. den., 414 U.S. 828 (38 L.Ed.2d 62, 94 S.Ct. 53)]; *Roach* v. *Parratt* (D.Neb. 1976) 407 F.Supp. 703, 706 [revd. on other grounds (8th Cir. 1976) 541 F.2d 772].)

And to the same general effect see *United States* v. *Jenkins* (6th Cir. 1975) 525 F.2d 819, 823; *United States* v. *Welebir* (4th Cir. 1974) 498 F.2d 346, 349, footnote 2; *United States* v. *Fiorella* (2d Cir. 1972) 468 F.2d 688, 691 (cert. den., 417 U.S. 917 [41 L.Ed.2d 222, 94 S.Ct. 2622]); *United States* v. *Smith* (8th Cir. 1972) 462 F.2d 456, 459; *United States* v. *Roth* (7th Cir. 1967) 391 F.2d 507, 511; *United States* v. *Ebare* (N.D.N.Y. 1976) 416 F.Supp. 398, 401; *United States* v. *Carney* (D.Del. 1971) 328 F.Supp. 948, 958; *United States* ex rel. *Crawley* v. *Rundle* (E.D.Pa. 1969) 312 F.Supp. 15, 18.

California authority on the subject is not as clear. Twice its courts, finding it unnecessary to determine the relation of double hearsay to probable cause, declined to do so. (See *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 841; *People* v. *Senkir* (1972) 26 Cal.App.3d 411, 419 [103 Cal.Rptr. 138].) The last cited case however, concluded (p. 419), " 'assuming that a search warrant could properly be issued on the basis of such double hearsay, both "prongs" of the *Aguilar* test would have to be met both as to the informant's statement and as to the statement of the declarant reported by the informant.' " Other such authority has held that hearsay on hearsay was not to be disregarded, but instead should be considered as part of the total factual situation offered to show probable cause. (*People* v. *Nadell* (1972) 23 Cal.App.3d 746, 753 [100 Cal.Rptr. 444]; *People* v. *Scott* (1968) 259 Cal.App.2d 268, 278-279 [66 Cal.Rptr. 257].) An earlier (pre-*Aguilar-Spinelli*) case concluded that the hearsay information of a primary unidentified police informer should have been under oath. (*People* v. *Harvey* (1958) 156 Cal.App.2d 516, 523 [319 P.2d 689].) And it was held that where the secondary hearsay came from "another officer identified by name, organization and duty station" who had sufficiently vouched for the primary informant, probable cause was made out. (*People* v. *Senkir, supra,* p. 419.)

■ But we are of the opinion that the apposite rule of this state was established by Justice Raymond Sullivan, then presiding over this division of our court, in *People* v. *Pease* (1966) 242 Cal.App.2d 442, 450 [51 Cal.Rptr. 448]. There it was stated: "[T]he mere fact that information acquired by an arresting officer comes from a fellow officer as a hearsay statement not based on the latter's personal observations does not justify the conclusion that reliance thereon is reasonable *in the absence of*

*evidence showing that the informant originally transmitting the information to the police was reliable* or that such information had its source in official police files or records. *Absent the conditions indicated above, such statements of a fellow officer, being hearsay on hearsay, cannot by themselves constitute reasonable cause . . . .*" (Italics added.) This closely follows the rationale of *Aguilar-Spinelli,* and conforms precisely to the widely followed federal rule.

*People* v. *Pease, supra,* has been cited with approval in *People* v. *Madden* (1970) 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971], and *Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 666-667 [87 Cal.Rptr. 202. 470 P.2d 11].

Our remaining inquiry is whether the magistrate of our case might have reasonably concluded that the fire marshal's hearsay upon hearsay affidavit otherwise met the requirements of *Aguilar* and *Spinelli.*

As noted, the primary informants, the several engineers who had worked upon, and were familiar with, the allegedly destroyed "faces 3 editing system," had seen it in Bingham's possession after the fire. They spoke "in language that is factual" in respect of a matter of which they had "personal knowledge." Indeed, in Bingham's sworn claim of loss (attached to the fire marshal's affidavit) he had averred that each of those persons had such knowledge. And, engineer John Mason's demonstrated knowledge reasonably applied also, in respect of his information that the purportedly destroyed "vello-bind system" and "blue ray machine" were also in Bingham's possession. Moreover .it must reasonably be said that the engineer informants' information was strongly corroborated, not only by Bingham's above noted admissions, but by the fire marshal's nonhearsay professional opinion that the fire had its origin in a criminal purpose.

Adverting to the secondary hearsay information of McPherson, it will be noted that his information concerned only what he had been told by the four engineers. Having found him reliable, the magistrate reasonably could, and did, conclude that McPherson, speaking in factual language of information personally imparted to him, had correctly reported it.

Thus, the second of the requirements of *Aguilar-Spinelli* was also met by the fire marshal's affidavit.

 Obedient to the above noted requirement of *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 150, and observing "sufficient competent evidence supportive of the magistrate's finding of probable cause" we must, and do, honor his determination.

 Another reason advanced by the superior court for its suppression order was that the information of the affidavit, dated January 5, 1978, was "stale," since "the latest of which is *February, 1977.*" (Italics added.) That conclusion is unsupported by the affidavit which, relating McPherson's information to the affiant fire marshal, stated: "Mr. Mason [one of the four engineers] also told Mr. McPherson that on *December 29, 1977,* he observed in the place where Mr. Ward Bingham now works, . . . the faces 3 editing system that he constructed for Mr. Bingham, the blue ray machine and the velo-bind, . . ." (Italics added.) Information eight days old will not ordinarily be considered stale. (See *People* v. *Mesa, supra,* 14 Cal.3d 466, 470 (six days); *People* v. *Superior Court (Johnson)* (1972) 6 Cal.3d 704, 713 [100 Cal.Rptr. 319, 493 P.2d 1183] (seven days); *People* v. *Webb* (1973) 36 Cal.App.3d 460, 468-469 [111 Cal.Rptr. 524] ("a little more than two weeks"); *Brown* v. *Superior Court* (1973) 34 Cal.App.3d 539, 544 [110 Cal.Rptr. 107] (nine days); *People* v. *Scott, supra,* 259 Cal.App.2d 268, 277-278 (eighteen days).) Furthermore, since it appeared from the affidavit that the three items of property had been in Bingham's continuous possession or control for many months after the fire, there would be little reason to conclude that he had disposed of it during the few days before the affidavit's execution.

The peremptory writ of mandate will issue.

Racanelli, P. J., and Newsom, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied May 30, 1979.