[Civ. No. 5393. Fifth Dist. Apr. 29, 1980.]

CHARLES SANDERSON et al., Petitioners, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Dallas P. Cole, Public Defender, Robert D. Chase, Deputy Public Defender, Louis & McGrew and Spencer P. McGrew for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and Shirley A. Nelson, Deputy Attorneys General, for Real Party in Interest.

OPINION

FRANSON, Acting P. J.—Petitioners seek a writ of mandate restraining respondent court from further proceeding in two related criminal actions. In action No. 163581, both petitioners are charged with burglary and receiving stolen property (Pen. Code, §§ 459, 496, subd. 1). In action No. 163580, petitioner Sanderson alone is charged with possessing a concealable firearm in violation of Penal Code section 12021.

Petitioners contend that respondent court should have granted their motions to suppress evidence seized during their arrest in a private residence on two grounds: (1) The nonconsensual entry of the residence by law enforcement officers to execute arrest warrants was without probable cause to believe that petitioners were in the residence. Subsumed within the probable cause issue is the question whether the *Harvey-Madden* standard was met by the prosecution at the suppression hearing. (2) Apart from the entry into the premises, the evidence seized

therein (stolen jewelry found in an open suitcase) should have been suppressed because the officers had no search warrant and they exceeded the permissible scope of a search incident to a lawful arrest under *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. As we will explain, petitioners' first contention must fall; however, the second contention is sound, and we are compelled to issue a writ directing suppression of the evidence found in the suitcase.

## FACTS

Deputy Sheriff Vince Ladd and other officers went to the residence at 1804 Floyd Avenue in Modesto, California, on October 17, 1979, to arrest petitioners pursuant to arrest warrants for escape from custody in Alameda County. On that date, Officer Ladd had learned from Officer Al Petrides that an undisclosed informant had told Petrides he had seen petitioners at the Floyd Avenue residence.[1] After the officers knocked on the door, someone peered out the window, then said, "Cops." The officers heard the sound of running feet. After about a minute of continued knocking had elapsed, a woman responded to the officers' knock by opening the door. Ladd explained to the woman that the officers wanted to enter the house to look for two escapees; the woman became somewhat abusive and told the officers she would not let them in without a search warrant. Officer Ladd told her he did not need a search warrant because he had a teletype copy of the extract of the warrants from the Alameda County Sheriff's office. The woman would not consent to the entry so Ladd entered the residence with his gun drawn.

Petitioner Sanderson was found hiding in the shower in the bathroom off the master bedroom at the rear of the house. Petitioner Cummings was found in a closet in another bedroom toward the rear of the house. Both were handcuffed and placed under arrest; a pat-down search of Sanderson revealed a loaded revolver which had been concealed in the front of his pants. The officer took both petitioners to the living room area at the front of the house where they had also gathered the other occupants of the house.

---

[1]The record is not clear as to when the informant saw petitioners at that address. Although Officer Ladd testified that the informant gave Petrides a specific date when he saw petitioners there, Ladd declined to give the date on the ground it would tend to reveal the informant's identity. Ladd testified only that petitioners were seen at Floyd Avenue within 10 days before the arrest.

Officer Ladd testified that in order to find petitioner Cummings in the second bedroom, he had to step around an open suitcase on the floor of the bedroom. After petitioners had been taken to the front of the house, Ladd returned to the second bedroom. Ladd said his purpose in doing this was to question Bobby Stanfill, one of the permanent residents of the house.[2] Stanfill testified, however, that the officers had already questioned him in the master bedroom where "they kind of tore up my bedroom." Stanfill's testimony is uncontradicted. Officer Ladd testified that when he returned to the second bedroom to question Stanfill, he again noticed the open suitcase on the floor and saw for the first time that it contained clothing and some expensive looking turquoise and silver jewelry. Ladd asked Stanfill about the suitcase and Stanfill told him the suitcase had come from a burglary in Riverbank and belonged to petitioners. Officer Ladd thereupon took the jewelry into custody.

The turquoise jewelry was later identified as having been stolen from the house of Sam and Geraldine Paregian, Stanislaus County residents.

### The Entry Into the Residence

■ Petitioners contend the entry of the Floyd Avenue residence was unlawful because the police lacked probable cause to believe petitioners were in the dwelling. Specifically, they argue that the prosecution failed to meet the burden of proof imposed by *People v. Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971] and *People v. Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689], which hold that when information relied on to establish probable cause travels from an informant through a relaying officer to an arresting officer, the People must introduce proof of each link in the chain of communication. The People must establish by sworn testimony that the officer who transmitted the information did, in fact, receive the information from the purported source; otherwise, probable cause could be manufactured within the police department by one officer transmitting information purportedly received by him to another officer without establishing under oath how the information was obtained by the former officer. Such competent testimony, of course, may come from the informant, the officer who relayed the tip *or* a third party who overheard the conversation between the informant and the relaying officer.

---

[2]Officer Ladd testified, ". . . I escorted Mr. Stanfill back into the bedroom for an interview. At that time I observed the contents of the suitcase."

In the present case, there was substantial evidence that the source of the information was something other than the imagination of Officer Petrides. Officer Ladd had personal knowledge of the existence of the informant. He also overheard at least part of the conversation between Petrides and the informant. The record contains the following evidence concerning how Officer Ladd received the information that petitioners were at the Floyd Avenue residence:

"THE COURT: Officer, the information that you received with relation to the location of Mr. Sanderson and Mr. Cummings, was that information received directly from you by the informant by some means or was it received by some other law enforcement official and then passed on to you?

"[OFFICER LADD]: It was received through a law enforcement official *with the informant present at the time that the information was relayed to me.*

"THE COURT: If I understand you correctly, the informant gave the information to another law enforcement officer, and then the law enforcement officer brought the informant to you?

"[LADD]: The source was providing information to a law enforcement officer, and that law enforcement officer was relaying it on to me.

"THE COURT: All right. So you received it through a law enforcement officer?

"[LADD]: That's correct.

"[DEFENSE COUNSEL]: May I reiterate my objection, Your Honor, which is a point we have not yet ruled out? Were you face-to-face with this informant or were you getting everything second hand?

"THE COURT: I think he's answered the question. You received information second hand, if you wish to use that phrase; is that correct?

"[LADD]: *I knew that the informant was present. I was able to hear the conversation going on between the officer.*

"     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"THE COURT: Was the informant in your physical presence?

"[LADD]: No, sir." (Italics added.)

From the foregoing, it is clear that the purported informant exists as a person. Moreover, Ladd was able to hear at least a part of the conversation between Officer Petrides and the informant even though Ladd was not physically present. (Ladd apparently overheard Petrides conversing with the informant in an adjoining room.) Since the magistrate found that the purported informant was a reliable person, and this finding is supported by evidence that he had provided reliable evidence in the past, Ladd could reasonably rely on the information furnished him by Officer Petrides. (See *People* v. *Pease* (1966) 242 Cal.App.2d 442 at pp. 449-450 [51 Cal.Rptr. 448], citing *People* v. *Melchor* (1965) 237 Cal.App.2d 685 [47 Cal.Rptr. 235], for the proposition that if an arresting officer receives information from a reliable informant through a conduit of fellow police officers, the arresting officer may reasonably rely on that information received via the two-step information. (Cf., *People* v. *Superior Court* (*Bingham*) (1979) 91 Cal.App.3d 463, 474-475 [154 Cal.Rptr. 157].) Since the informant's tip was based on his personal knowledge (observation of petitioners at the residence), the probable cause requirements under *Harvey-Madden* were satisfied.

We accept petitioners' argument that when officers forcibly enter a house to make an arrest pursuant to a warrant as authorized by Penal Code section 844, they must have probable cause to believe that the person to be arrested is located in the house. The "reasonable grounds" for believing the arrestee to be in the house as required by Penal Code section 844 is the equivalent of the probable cause required for the issuance of a search warrant or for a warrantless arrest. (See *People* v. *Cagle* (1971) 21 Cal.App.3d 57, 64 [98 Cal.Rptr. 348]; *People* v. *Pease, supra,* 242 Cal.App.2d 442, 445; cf. *People* v. *Adkins* (1969) 273 Cal.App.2d 196, 199 [78 Cal.Rptr. 397].)

The record reflects that Officer Ladd had been told that petitioners had been seen at the Floyd Avenue residence within 10 days prior to the time of their arrest. Assuming this information alone was insufficient to establish probable cause to believe that petitioners were at the residence on the day of their arrest, at the very least it did provide Officer Ladd with sufficient information to justify further investigation to determine if petitioners were at the residence. Officer Ladd was entitled

to go to the Floyd Avenue residence, to knock on the door, and to inquire as to whether petitioners were inside the house. This essentially is what he did. After Ladd knocked on the door, someone looked out the window, said, "Cops," and Ladd then heard the sound of running feet. At this moment, he acquired full probable cause to suspect that the petitioners who were escapees from Alameda County were inside the house. The officers then had authority to execute the arrest warrants pursuant to Penal Code section 844.

## SEIZURE OF THE EVIDENCE
## INSIDE THE HOUSE

■ We turn now to petitioners' contention that the seizure of the jewelry found in the open suitcase on the floor of the bedroom where Cummings was arrested should have been suppressed. In *Chimel* v. *California, supra*, 395 U.S. 752, the Supreme Court imposed Fourth Amendment restrictions on an officer's right to conduct a warrantless search of a house incident to a defendant's lawful arrest in the house. It held that when an arrest is made, the officer may search the arrestee's person and the area "within his immediate control" which means the area from within which the arrestee might gain possession of a weapon or destroy evidence. The high court stated, "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs.... Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." (*Id.*, at p. 763 [23 L.Ed.2d at p. 694].)

In *Payton* v. *New York* (1980) 445 U.S. 573, 586, footnote 25 [63 L.Ed.2d 639, 651, 100 S.Ct. 1371], the Supreme Court reiterated the "basic principle of Fourth Amendment law" that searches and seizures inside a home without a search warrant are *presumptively unreasonable*; that such a search can be upheld only if the police can show that it "falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances,'" (quoting from *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022]).

In the present case, the People do not assert any exigency; they do, however, assert that Officer Ladd had the right to seize the jewelry under the "plain view" doctrine. Although there was conflicting testimony

as to whether the suitcase was open or shut when first observed by Officer Ladd, the trial judge resolved that conflict in favor of the People, and we are bound by that finding. It is important to note, however, that Ladd did not observe or discover the jewelry in the suitcase until he had returned to the bedroom to question Mr. Stanfill after the officers had gathered all of the occupants in the living room. Thus, Ladd's "plain view" of the seized items occurred when he returned to the bedroom with Stanfill.

The Supreme Court decision which explains the requirements for invoking the plain view doctrine is *Coolidge* v. *New Hampshire, supra,* 403 U.S. 443. There, the plurality opinion of Justice Stewart states: "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. (*Id.,* at p. 465 [29 L.Ed.2d at p. 582].)

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure." (*Id.,* at p. 466 [29 L.Ed.2d at p. 583].)

*Coolidge* v. *New Hampshire* sets forth three requirements for the applicability of the plain view doctrine: (1) there must be a prior lawful intrusion of the area where the view takes place; (2) the discovery of the seized items must be inadvertent; and (3) it must be immediately apparent to the police that they have evidence before them. (See 1 LaFave, Search and Seizure (1978) § 2.2, p. 242.)

■ The plain view doctrine is inapplicable in the present case for the simple reason that Officer Ladd did not have a right to return to the bedroom following petitioners' arrest. (See *Harris* v. *United States* (1968) 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992].) Not having a search warrant, Officer Ladd had no legitimate reason for returning to the bedroom where the jewelry was found once petitioners had been taken into custody. Although Ladd said he went back to that bedroom to question Stanfill, there is uncontradicted testimony from Stanfill that

he had already undergone extensive questioning by the officers in the master bedroom where a search was conducted before proceeding to the bedroom where the jewelry was seized. We have reviewed the diagram of the residence (defendants' exhibit A), and it is readily apparent that Officer Ladd's sole purpose in entering the second bedroom with Stanfill was to search the bedroom or to discover the contents of the suitcase he had previously seen there. Just as police officers may not use the strategy of deliberately arranging to arrest a defendant while he is within certain premises so that the officers may take advantage of their presence to seize evidence in plain sight (*Chimel* v. *California, supra,* 395 U.S. at p. 767 [23 L.Ed.2d at p. 696]; see also 2 LaFave, Search and Seizure, *supra,* § 6.7, pp. 491-492 and cases cited), by analogy, officers cannot move a person from room to room for the purpose of questioning as a pretext for seizing items open to their view.

Because the officers had no lawful right to take Stanfill into the second bedroom for questioning after they had executed the arrest warrants for petitioners, they had no right to seize the turquoise jewelry.

Let a writ of mandate issue in action No. 163581 directing the respondent court to suppress the contents of the suitcase found in the search of the premises at 1804 Floyd Avenue, Modesto, California. The stay issued by this court on January 25, 1980, is dissolved.

Hopper, J., and Zenovich, J., concurred.