FRANKLIN ET AL. *v.* STATE

[No. 81, October Term, 1955.]

(Six Appeals In One Record)

*Decided January 11, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Harry A. Cole* and *Ellis Levin,* for appellants.

*Frank T. Gray,* Assistant Attorney General, with whom were *C. Ferdinand Sybert,* Attorney General, *Anselm Sodaro,* State's Attorney of Baltimore City, and *John C. Weiss,* Assistant State's Attorney, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellants, Franklin and Myers, together with one Pratt, were convicted by the court sitting without a jury of violations of the lottery laws. Motions were made before the trial to dismiss the indictments and to suppress as evidence the lottery paraphernalia which had been seized by the police in a room at Pratt's home, and were denied, as was a motion made at the close of the case to strike from the evidence all of the lottery paraphernalia. Pratt was granted a new trial by the Supreme Bench of Baltimore City seemingly on the ground that his right of privacy as a householder had been violated by an unreasonable and unwaived search, so that the evidence thus discovered should have been excluded as

to him under the provisions of Code, 1951, Art. 35, Sec. 5, commonly referred to as the Bouse Act. The appellants' claim before the Supreme Bench that their rights had been similarly violated was rejected and they were denied a new trial. They appeal from the judgments and sentences which followed.

On February 1, 1955, the police department received an anonymous complaint by telephone that there was a violation of the narcotics law at 2915 Elgin Avenue. Lt. Bataglia and Sgts. Judd and Linton drove to the house to make an investigation. They were in uniform but had no warrants of any kind. Upon their arrival at the house, an ordinary residence, one sergeant went to the rear of the house and the lieutenant and the other sergeant went to the front door and knocked. The door was opened by Monica Hawkins, the sixteen year old step-daughter of Pratt, who with her sister, mother and step-father constituted the household. Pratt is buying the house on a so-called rental plan, paying $25.00 a week. The appellants and the State differ as to what occurred after the knock on the door, which opened directly into the living room.

The police version is this: Monica opened the door and said "Come on in", and as they did so, the officers could hear the clicking of adding machines and men's voices coming from an upper room. They asked Monica if anyone else was in the house, and at that she ran to the steps, which were in the living room, and cried "Police, police, the police are here." They asked her why she did that and, in reply, she asked "What do you want?". They told her they had a complaint that dope was being used on the premises and she replied "dope, dope, man, there ain't no dope here, go ahead and look around", and waved her arm affirmatively. She then dashed up the steps and the lieutenant followed, with the sergeant behind him. As they reached the top of the steps, they looked through an open door into a bedroom and saw Franklin, Myers and Pratt, each with an adding machine and lottery slips before him. Myers and Pratt

said: "You have got us, lieutenant" and then Franklin added: "You have got me, too." They said they had been working there one day and that the "stuff" (referring to the lottery paraphernalia in front of them) belonged to the three of them. Myers said he lived at 2101 Presbury Street and that this was the first day at the Elgin Street house. Franklin said that he lived at 3124 Presstman Street and that this was also his first day at Elgin Street.

Monica testified that she told the police that her parents were not home and that they could not come in without a search warrant but the officers pushed open the door and searched the premises, saying they were looking for dope and that they didn't need a warrant. She told them there was no dope on the premises, and they then pushed by her and went upstairs and rapped on the door of a bedroom in which the appellants and Pratt were operating adding machines and in which there were lottery slips and lottery paraphernalia. The door was opened, the officers went in, arrested the defendants and seized the evidence which was later introduced at the trial.

Mrs. Pratt, Monica's mother, testified that she and her husband occupied the Elgin Street house and that on the Saturday before the day the police came, which was Monday, she had rented the bedroom to Myers and Franklin to be used by them for several hours a day for one week and that she had received $25.00 for one week's rent in advance.

The trial court decided that the State's version of the police entry into the house and their subsequent actions was the credible one and that the door of the bedroom was open. He found that the weight of the evidence did not show that the rental transaction actually occurred and that it did not occur. He determined that the evidence indicated that Monica had the right to invite the police into the premises, that she did so, and that the officers were not trespassers because they came into the house by invitation. He concluded that

even if Mrs. Pratt's testimony were true, there was no invalid search as to either of the appellants. He said: "* * * according to Mrs. Pratt's testimony all she did was to let these three men use the room, the bedroom. Their right as to any other part of the premises, if any, was one of ingress and egress only. This was not their home, and at best for them, they could use the front room, stair steps, and second floor hall in common with other people as a means of entering the bedroom which they claim they had a right to use under an agreement with Mrs. Pratt. Even if the officers didn't have probable cause to believe that illegal activities were in progress until they looked in on the defendants and their paraphernalia from the hallway, Myers and Franklin at least had no ground for complaint."

The appellants argue that the court's decision erroneously reflected reliance on a supposed right of the police to enter and search as they pleased because they were looking for narcotics and that he erred to their prejudice in refusing to accept, on the uncontradicted evidence, that they rented the room. The rental, they say, gave them such an interest in the premises that the entry and seizure were unreasonable and illegal, that the permission to enter given by Monica (if she gave it) did not and could not waive their rights, and that the police, at no time before they violated appellants' rights of privacy, became aware of the commission of a misdemeanor in their presence and so the evidence seized was unavailable against them.

We think the lower court did not fail to recognize and apply the controlling principles of law. The fact that the officers were looking for evidence of a crime of which they had been forewarned is significant only in that it explains as reasonable their presence at the front door. That narcotics were involved gave them no greater right to enter the premises than if they were checking some other crime. Code, 1951, Art. 27, Sec. 368, makes the Bouse Act inapplicable to the fruits of an illegal search but it does not authorize such a search. *Eisenstein v.*

*State,* 200 Md. 593; *Salzburg v. Maryland,* 346 U. S. 545, 98 L. Ed. 281, 290. The decision below was not on the ground claimed by the appellants. It was, as it is here, on the ground that as far as the appellants were concerned, the officers were not trespassers in the house, and that, while justifiably and reasonably in position to do so, they observed the commission of a misdemeanor without search.

In support of the point that the court had to find that the room was rented by appellants, *Frank v. State,* 189 Md. 591, and *Rizzo v. State,* 201 Md. 206, are heavily relied on, as are authorities from other States which have held that uncontradicted evidence cannot be disregarded by either the jury or the court if it is not inherently improbable. We observe in passing that it may well be that the evidence was contradicted and was inherently improbable, as the trier of the facts explicitly found. The police said that each of the appellants told of living elsewhere. Neither of them said anything to the officers as to their tenancy of the room or as to paying rent. They were asked about this and did not say anything about renting a room. Pratt, who owned the house, was acting with the appellants in the operation involved, and the rental arrangement claimed seems incongruous under the circumstances. Nevertheless, we do not deem it necessary to decide the question. Assuming without deciding that it was proven that the room was rented by the appellants, we think the case is controlled by the principles that underlie the decisions in *Eisenstein v. State,* 200 Md. 593, *supra;* and *Harris v. State,* 203 Md. 165. In the *Eisenstein* case, the police officers acted on information that there was a violation of the narcotics laws in an apartment house, entered the building through an entrance hall or vestibule and found the appellant shoving lottery slips into his pocket. They arrested him and took the slips from him. It was contended that the officers were trespassers and the slips were inadmissible under the Bouse Act. The Court held that the officers were lawfully in the vestibule since it was a public hall-

way and could arrest for the misdemeanor committed in their presence. In the *Harris* case the police went into an alleyway between the house in which appellant lived and the house next door and observed violations of law which served as a basis for the issuance of a search warrant. It was held that the alley was part of the curtilage, an area "properly regarded as part of the home" of the appellant but that since the area was used in common with other tenants in the building and those next door, it would be an undue extension of the rule of protected privacy "* * * to hold illegal the officer's entering and observing, visually and without physical probing, the appellant's possession of lottery tickets, in an area in which the appellant had so limited an interest, and which was shared by others who are strangers to her." In the case before us, as the trial court pointed out, the entrance-way to the house, the stairway and the second floor hallway were portions of the premises as to which the appellants had no right of privacy or similar interest which was violated by the actions of the police under the circumstances of the case. The trier of the facts found that they were invited into the house upon stating their business and, further, were invited to search for narcotics. They were spurred to climb to the second floor by the actions of Monica Hawkins and the sound of the adding machines and, through the open door, observed the commission of a misdemeanor; that is, the possession of lottery paraphernalia. Further, as soon. as it was apparent that they had observed the evidence of the lottery operation, the appellants admitted what they were doing and cooperated in surrendering the evidence. The situation is quite analogous to those in *Kershaw v. State,* 199 Md. 135; and *Griffin v. State,* 200 Md. 569, 574. In the latter case the police saw possession of lottery through the window and were held to be justified in entering the house to seize it. Here the police were not, as far as appellants were concerned, trespassers in the upper hallway, whence they observed the lottery operation in the bedroom before they entered.

See, too, *Bassin v. State,* 198 Md. 354; and *Bass v. State,* 182 Md. 496. We think the lower court correctly applied the law to the facts as he found them and that the evidence clearly permitted the findings he made. This being so, the right of arrest and the consequent right to seize incriminating evidence in the possession and under control of the arrestees, and to use it at the trial, follows. We find no error and the judgments will be affirmed.

*Judgments affirmed, with costs.*