[Crim. No. 25366. Jan. 2, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ALBERT JACOBS , Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Peter R. Silten, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene W. Kaster and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROUSSARD J.**—Defendant appeals from a judgment of conviction of burglary, the key evidence of which was seized by officers who entered his home with a warrant for his arrest. He contends the police failed to comply with the knock-notice statute and that his 11-year-old stepdaughter did not give valid consent to the intrusion. We hold that the seizure was unlawful because the prosecution failed to show that the police had reasonable grounds for believing defendant was in the house or that they reasonably believed the child had the authority to permit the entry and search.

## I. FACTS

Defendant was employed as a janitor at an automobile dealership in San Rafael from March through September 1981. The business was burglarized on September 5 and December 20 of that year, and a specially manufactured television set was stolen on each occasion. The evidence suggested that defendant was involved in one or both of these crimes.

On the morning of New Year's Eve, 1981, Sergeant Hasser of the San Rafael Police Department obtained a valid warrant for the arrest of defendant in connection with the burglaries. About 3:20 p.m. on the same day, Hasser and Detectives Keller and Boyd, all dressed in plain clothes, went to defendant's home in an unmarked vehicle to execute the arrest warrant. They did not have a valid search warrant.

Hasser and Keller knocked on the front door while Boyd observed the back of the house. Gretchen, defendant's 11-year-old stepdaughter, greeted the 6-foot-tall officers at the door.

There was conflicting testimony about what happened next. Hasser testified that he identified himself to Gretchen and showed her his badge. He then asked to see defendant and inquired if he could enter the house; he was standing outside in inclement weather at the time. He did not present the warrant or explain that he intended to arrest defendant. Gretchen admitted Hasser and Keller into the front room and, almost simultaneously, responded that defendant would return home in about an hour. Hasser "wanted to believe the young girl," but he felt he had a "responsibility to check a little bit to make sure [defendant] wasn't just standing in one of the rooms."

Hasser asked Gretchen for a quick tour of the house to confirm defendant's absence. Gretchen accompanied the officers through the rooms of the house. The officers discovered Gretchen's younger brother, whom she was babysitting, but they did not find defendant. On their way out of the house, the officers noticed in plain view a specially manufactured television set matching the description of one stolen from the auto dealership. When Hasser asked Gretchen about the set, she said defendant had brought it in just before Christmas. Hasser seized the set, both as contraband under Penal Code section 537e[1] (serial number removed) and as evidence of burglary. He then left his card and requested that defendant call him. The officers departed without placing the house under surveillance.

Gretchen testified as follows for the defense. She answered a knock at the door and discovered two men. When Hasser asked for defendant, she told him defendant would be back in an hour. Hasser then stated the officers "had to come in and check around . . . and see if [defendant] was there." Without asking permission to enter, Hasser and Keller proceeded into the dining room, gave Gretchen a card, and identified themselves. The officers then searched the rest of the house as Gretchen watched from the dining room. When they returned to the front room, Detective Boyd brought them a listing of serial numbers. The officers examined the television set, removed it, and departed. About an hour later, defendant returned to the house.

On cross-examination, Gretchen testified she was babysitting her two younger brothers, aged two and five, when the officers arrived. Her older brother and parents were not home. She admitted that Hasser asked permission to enter while he was standing on the steps, and that he used a normal tone of voice, did not show her a weapon, did not frighten her, and did not push her aside in making his entry. On redirect, Gretchen testified that Hasser did not really ask permission but stated "they would have to come in and check if John was there."

Defendant was charged with two counts of burglary in violation of section 459. He pleaded not guilty and moved to suppress the television set pursuant to section 1538.5. The superior court denied the motion, and defendant exhausted his opportunities for review of the ruling. Defendant was convicted of the December burglary, and the Court of Appeal affirmed.

## II. DISCUSSION

■ Both the California and the federal Constitutions prohibit police from entering a suspect's home to make a routine felony arrest unless the

---

[1] All further statutory references are to the Penal Code.

entry is based on an arrest warrant, exigent circumstances, or consent. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 275-276 [127 Cal.Rptr. 629, 545 P.2d 1333], cert. den. 429 U.S. 929 [50 L.Ed.2d 299, 97 S.Ct. 335]; *Payton* v. *New York* (1980) 445 U.S. 573, 576 [63 L.Ed.2d 639, 644-645, 100 S.Ct. 1371].) In this case the Attorney General contends the officers' entry was justified on two grounds: (1) they were in possession of an arrest warrant, and (2) they entered with Gretchen's consent. Defendant maintains the warrant was not a valid ticket to enter his home because the police did not execute the warrant in compliance with section 844. He contends Gretchen's consent neither justified the entry nor excused the statutory violation because she lacked actual and apparent authority to permit the entry and search.

Defendant asserts the entry violated section 844 because he was not inside the house when the police entered and the police lacked reasonable grounds for believing him to be there. Section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, *or in which they have reasonable grounds for believing him to be,* after having demanded admittance and explained the purpose for which admittance is desired." (Italics added.) These requirements apply when the arrest is to be made by virtue of a warrant and when officers are authorized to make an arrest without a warrant. (See *People* v. *Bennetto* (1974) 10 Cal.3d 695, 698-700 [111 Cal.Rptr. 699, 517 P.2d 1163]; cf. *Miller* v. *United States* (1958) 357 U.S. 301, 309 [2 L.Ed.2d 1332, 1338, 78 S.Ct. 1190].)

Sergeant Hasser testified that he believed defendant was home because the police had obtained defendant's address from an application for employment, had observed defendant at that address in October 1981, and had ascertained that defendant was not employed at a daytime job. Hasser reasoned: "[I]f I don't know . . . about someone working, being employed or otherwise, being required to be away from the residence in the daytime, then my strongest suspicion is that he's going to be there."

We have previously held that "[s]ection 844 of the Penal Code requires more than a reasonable belief that the person to be arrested owns or leases the dwelling which is entered; there must be a *reasonable belief that the person is inside at the time of entry.*" (*People* v. *Bennetto, supra,* 10 Cal.3d 695, 700 (italics added); accord *People* v. *Smith* (1972) 7 Cal.3d 282, 287 [101 Cal.Rptr. 893, 496 P.2d 1261]; *Horack* v. *Superior Court* (1970) 3 Cal.3d 720, 726-727 [91 Cal.Rptr. 569, 478 P.2d 1]; *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 293, fn. 9 [78 Cal.Rptr. 504, 455 P.2d 432].) Although Hasser's testimony supports an inference that defendant *could* be

home at 3:20 p.m., when the officers attempted to serve the warrant, it does not, without more, support a finding that the officers had reasonable grounds to believe defendant was in fact home.[2] ■ "The term 'reasonable grounds' as used in section 844 is the substantial equivalent of the terms 'reasonable cause' and 'probable cause' as used in constitutional and statutory provisions pertaining to the issuance of a search warrant . . ., an arrest without a warrant . . ., a commitment by a magistrate or an indictment by a grand jury. . . ." (*People* v. *Pease* (1966) 242 Cal.App.2d 442, 445 [51 Cal.Rptr. 448]; accord *Sanderson* v. *Superior Court* (1980) 105 Cal.App.3d 264, 270 [164 Cal.Rptr. 290].) "Reasonable grounds to believe the person named in the warrant was in the house means such a state of fact as would lead a man of ordinary caution or prudence to believe, and to conscientiously entertain a strong suspicion the subject of the warrant was in the house." (*People* v. *Cagle* (1971) 21 Cal.App.3d 57, 64 [98 Cal.Rptr. 348].) ■ The Attorney General's theory would permit arresting officers who otherwise comply with section 844 to kick down a suspect's door on any weekend or legal holiday if they have reason to believe the suspect is employed only on weekdays. We do not think the Legislature intended an exception to section 844 for intrusions into the homes of suspects when they are not working.

If the officers had a hunch or a hope defendant would be home, the evidence indicates it was dispelled before they entered the house. They arrived in plain clothes and an unmarked car, and there is no suggestion defendant perceived their arrival and fled or hid. Defendant's vehicles were nowhere in sight. When they asked Gretchen if defendant was home, she told them he would be back in an hour. The evidence does not suggest that Gretchen's response or behavior further aroused the officers' suspicions.

Sergeant Hasser was concerned because adults sometimes tell children to say "certain things," and he felt he had a duty to execute the warrant.[3] His experience with fibbing children, however, absent any indication that Gretchen was a member of that class, cannot supply the objective reasonable belief required by section 844.[4] We find no substantial evidence in the record

---

[2] We are mindful that defendant was wanted for a crime the fruits of which might well be in the house.

[3] An arrest warrant, of course, does not supply grounds for believing a suspect will be home when the police attempt to execute it; it assures only that there is reasonable ground to believe the suspect has committed the offense complained of (§ 813).

[4] At oral argument, the Attorney General conceded that, even apart from section 844, an arrest warrant will not justify a police entry into a suspect's home unless the officers have at least a reasonably well informed suspicion the subject of the warrant is within. It appears a majority of the Supreme Court would require something more. Justice Stevens, writing for the majority in *Payton,* stated in dictum: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a

to support a finding that any belief entertained by the officers that defendant was home was more than utter speculation. Although Sergeant Hasser had a duty to locate the suspect named in the arrest warrant, he had no authority to enter defendant's home to execute the warrant when defendant was not there because he did not have reasonable grounds to believe defendant was inside.

The Attorney General next contends the police did not violate the statute because they did not "break open the door or window." (§ 844.) Rather, they performed their task in a calm and decorous manner without intimidating the young girl who answered the door. They asked her if defendant was home, if they could come in to look for him, and if she would accompany them.

By its terms, section 844 applies to "breakings" to effect arrests. (*People* v. *Superior Court* (1973) 31 Cal.App.3d 788, 796 [107 Cal.Rptr. 756].) The word "break" in the context of section 844 is a term of art which includes more than the physical breaking of a door or window. Even a peaceable entry may be deemed a "breaking" if the entry undermines the statutory purposes of safeguarding the privacy of citizens in their homes and preventing unnecessary violent confrontations between startled householders and arresting officers. (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]; see *People* v. *Bennetto, supra,* 10 Cal.3d at p. 699 [passkey]; *People* v. *Bradley* (1969) 1 Cal.3d 80, 87 [81 Cal.Rptr. 457, 460 P.2d 129] [open door "at nighttime when the occupant apparently is asleep"]; *People* v. *Rosales* (1968) 68 Cal.2d 299, 303 [66 Cal.Rptr. 1, 437 P.2d 489] [unlocked screen door]; cf. *Sabbath* v. *United States* (1968) 391 U.S. 585, 590 [20 L.Ed.2d 828, 834, 88 S.Ct. 1755] [closed but unlocked door].) If the police obtain valid consent to enter, however,

dwelling in which the suspect lives when there is *reason to believe the suspect is within.*" (*Payton* v. *New York, supra,* 445 U.S. at p. 603 [63 L.Ed.2d 639, 661], italics added.) In his dissenting opinion, Justice White (joined by the Chief Justice and Rehnquist, J.) stated he did ". . . not necessarily disagree with the Court's discussion of the quantum of probable cause necessary to make a valid home arrest. . . . To obtain the [arrest] warrant, . . . the officers need only show probable cause that a crime has been committed and that the suspect committed it. However, under today's decision, the officers apparently need an extra increment of probable cause when executing the arrest warrant, namely, *grounds to believe that the suspect is within* the dwelling." (*Id.* at p. 616, fn. 13 [63 L.Ed.2d at p. 669, italics added; see also *State* v. *Roepka* (1984) 217 Neb. 139 [347 N.W.2d 857, 859] [nonconsensual entry into trailer house without reason to believe suspect was presently therein was constitutionally impermissible]; *State* v. *Loftin* (1981) 276 S.Ct. 48 [275 S.E.2d 575, 576-577] [entry with arrest warrant illegal because no facts or circumstances from which officers could have entertained a reasonable belief appellant was in his apartment].) Whatever the quantum of probable cause required by the Fourth Amendment, the officers in this case did not have it. Even if section 844 did not apply to this case, we have serious doubts whether the entry and search could be justified by the arrest warrant.

the entry is not considered a "breaking" (*Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 8 [88 Cal.Rptr. 380, 472 P.2d 468], cert. den. 400 U.S. 1023 [27 L.Ed.2d 635, 91 S.Ct. 588]), and the prosecution is not required by section 844 to show "reasonable grounds for believing" the defendant was inside the house. (*People* v. *Lara* (1974) 12 Cal.3d 903, 909 [117 Cal.Rptr. 549, 528 P.2d 365].)

Gretchen's consent was not valid and the entry must be considered a breaking unless she had the authority to permit the entry or the police reasonably and in good faith believed she had such authority. (*People* v. *Carr* (1972) 8 Cal.3d 287, 298 [104 Cal.Rptr. 705, 502 P.2d 513]; *People* v. *Hill* (1968) 69 Cal.2d 550, 554 [72 Cal.Rptr. 641, 446 P.2d 521], affd. *sub nom. Hill* v. *California* (1971) 401 U.S. 797 [28 L.Ed.2d 484, 91 S.Ct. 1106]; *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602, 607-608 [21 Cal.Rptr. 552, 371 P.2d 288]; *People* v. *Roberts* (1956) 47 Cal.2d 374, 377 [303 P.2d 721]; *People* v. *Gorg* (1955) 45 Cal.2d 776, 783 [291 P.2d 469]; *People* v. *Carswell* (1957) 149 Cal.App.2d 395, 401 [308 P.2d 852]; see *People* v. *Jennings* (1956) 142 Cal.App.2d 160, 169 [298 P.2d 56].)[5] ▮ The operative word in the rule is "reasonably"; thus, there must be some objective evidence of joint control or access to the places or items to be searched which would indicate that the person authorizing the search has the authority to do so. The mutual use of the property must be such "that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (*United States* v. *Matlock* (1974) 415 U.S. 164, 171, fn. 7 [39 L.Ed.2d 242, 250, 94 S.Ct. 988]; but see *Stoner* v. *California* (1964) 376 U.S. 483, 488-489 [11 L.Ed.2d 856, 860-861, 84 S.Ct. 889].)

The trial court did not make a finding as to whether the officers reasonably believed Gretchen had the authority to consent to the entry. The Attorney General contends the evidence shows the officers reasonably believed a child just under 12 years of age living in modern-day Fairfax, California, had reached an age of sufficient discretion to consent to a cursory police search of the family home for the purpose of determining if her parent was there. He argues this belief was supported by the officers' observation that Gretchen was babysitting her much younger siblings. (*People* v. *Misquez* (1957) 152 Cal.App.2d 471, 479 [313 P.2d 206].)

▮ We disagree. First, the record shows the officers entered the house before they discovered Gretchen was babysitting. Gretchen's role as baby-

---

[5] The rule of apparent authority has been regularly reaffirmed despite occasional criticism. (See *People* v. *Hill, supra,* 69 Cal.2d at p. 554, fn. 5; Weinreb, *Generalities of the Fourth Amendment* (1974) 42 U.Chi.L.Rev. 47, 60 (hereinafter Weinreb).)

sitter is therefore irrelevant to whether she exhibited authority to permit the entry. Second, the fact that Gretchen's parents had entrusted her with the care of children two and five years of age cannot alone support a finding that the eleven-year-old child had actual authority to permit adult strangers to enter and search the home. Minor children, even those who live in Fairfax, California, do not have coequal dominion over the family home. (See *Commonwealth* v. *Garcia* (1978) 478 Pa. 406 [387 A.2d 46, 55].) Although parents may choose to grant their minor children joint access and mutual use of the home, parents normally retain control of the home as well as the power to rescind the authority they have given. "It does not startle us that a parent's consent to a search of the living room in the absence of his minor child is given effect; but we should not allow the police to rely on the consent of the child to bind the parent. The common sense of the matter is that the . . . parent has not surrendered his privacy of place in the living room to the discretion of the . . . child; rather, the latter [has] privacy of place there in the discretion of the former." (Weinreb, *supra,* 42 U.Chi.L.Rev. at p. 60; see *People* v. *Jennings, supra,* 142 Cal.App.2d at p. 168.)

Other courts that have considered the authority, or capacity, of a minor child to consent to a police entry of the family home generally have refused to uphold the admissibility of evidence found therein in a criminal action against the parent.[6] The reasoning of these cases is sound: a child cannot waive the privacy rights of her parents. Because the evidence presented below, viewed most favorably to the prosecution, does not support a finding that Gretchen had the actual or apparent authority to permit even a superficial survey of the rooms of the house, the entry was a nonconsensual "breaking" within the meaning of the statute.

The Attorney General argues that any violation of the statute was a mere technicality which does not merit the suppression of evidence. It is

---

[6] E.g., *Commonwealth* v. *Garcia, supra,* 387 A.2d at page 55 (accused's 16-year-old daughter lacked coequal dominion and control over the home of the accused where accused had power to determine extent of daughter's authority to admit people to the home); *Laasch* v. *State* (1978) 84 Wis.2d 587 [267 N.W.2d 278, 282] (no showing that defendant's 5-year-old son possessed the capacity, intelligence, or authority to give constitutionally effective consent to the police entry into defendant's home); *Padron* v. *State* (Fla.App. 1976) 328 So.2d 216, 217-218, cert. den. (Fla. 1976) 339 So.2d 1172 (accused's 16-year-old son does not share common authority with his father over a dwelling place provided by the father); *Hembree* v. *State* (Tenn. 1976) 546 S.W .2d 235, 241 [99 A.L.R.3d 586] (when parents and 18-year-old son are in custody and readily available, consent by son is invalid because his rights to use or occupy the premises are not necessarily equal to the rights of his parents); *May* v. *State* (Miss. 1967) 199 So.2d 635, 639 (accused's 15-year-old son cannot waive constitutional right of father to object to illegal entry and search of home); *State* v. *Malcom* (1964) 55 Del. 1 [203 A.2d 270, 273] (accused's 16-year-old son lacked authority to consent to search of home in absence of accused).

well settled that substantial compliance with the statute is sufficient. (*Greven* v. *Superior Court, supra,* 71 Cal.2d at p. 291.) Substantial compliance means "*actual* compliance in respect to the substance essential to every reasonable objective of the statute,' as distinguished from 'mere technical imperfections of form'" (*Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 [176 Cal.Rptr. 620]). An entry based on the unauthorized consent of an 11-year-old child, however, frustrates the objectives of the statute. It violates the privacy rights of the parents and increases the likelihood that an adult occupant will be startled by the apparently unauthorized intrusion and react violently out of concern for the safety of the child. A violent confrontation is even more likely in a case such as this, where plain-clothed officers approach the house in an unmarked car and enter without speaking to any adult occupants. ■ The potential for abuse would be great if the police were permitted to rely on a young child's consent to enter and search without first expending the little effort required to attempt to ascertain whether the child has the authority to permit such intrusions. (See *People* v. *Bradley, supra,* 1 Cal.3d at p. 88.) ■ Because the entry jeopardized the statutory objectives of safeguarding the privacy of persons in their homes and preventing violent confrontations between startled householders and the police, the entry did not substantially comply with the statute.

■ We do not suggest that consent by a minor will be ineffective in all cases in which no adult occupants are present. As a child advances in age she acquires greater discretion to admit visitors on her own authority. In some circumstances, a teenager may possess sufficient authority to allow the police to enter and look about common areas. (See *Franklin* v. *State* (1956) 208 Md. 628 [119 A.2d 439, 442].) Exceptional circumstances also may justify a search that otherwise would be illegal. For example, some courts have upheld searches made at the request of a child or when a child is the victim of or a witness to a crime.[7] We do not here explore the exceptions to the general rule we announce today.[8] Gretchen did not request the search, and she was neither a victim of the crime nor a witness to it.

---

[7]E.g., *Commonwealth* v. *Maxwell* (1984) 505 Pa. 152 [477 A.2d 1309, 1314-1315], certiorari denied 469 U.S. 971 [83 L.Ed.2d 306, 105 S.Ct. 370] (consent by 16-year-old daughter valid where there was no evidence of immaturity or mental instability and daughter approached the officers and asked them to search); *Harmon* v. *State* (1982) 277 Ark. 265 [641 S.W.2d 21, 23] (the 16-year-old daughter of defendant's paramour could consent to search of nonprivate areas of her mother's house, in which they all lived, where she knew about consents to searches, had seen her father execute one, had the right of access, had reported a murder and produced the weapon, and had accompanied the officers); *Murphy* v. *State* (Ala.App. 1978) 355 So.2d 1153, 1156 (consent by accused's 12-year-old daughter valid where daughter was victim of sex crime).

[8]The Attorney General urges us to carve out an exception for cases in which the police have an arrest warrant. We decline the invitation. The fact that a magistrate has determined there is probable cause to believe the suspect has committed a crime is irrelevant to the issue

 Because the police lacked reasonable grounds for believing defendant was inside the house, their nonconsensual entry violated the statute even though the police had an arrest warrant. (*People* v. *Bennetto, supra,* 10 Cal.3d at p. 700.) Noncompliance with section 844 renders any search and seizure following the entry unreasonable within the meaning of the Fourth Amendment (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 325.)[9] The television set was plainly damaging evidence against defendant with respect to the crime of which he was convicted, and its admission at trial was prejudicial error. (*People* v. *Bennetto, supra,* 10 Cal.3d at p. 699; *Stoner* v. *California, supra,* 376 U.S. at p. 490 [11 L.Ed.2d at p. 861]; cf. *Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407].)

The judgment of the Court of Appeal is reversed.

Bird, C. J., Reynoso, J., and Grodin, J., concurred.

**MOSK, J.**—I dissent.

I do not reach the issue of consent to search premises by an 11-year-old child, because in my opinion the police, armed with an arrest warrant, substantially complied with the requirements of Penal Code section 844 and therefore properly entered defendant's premises, with or without consent, to execute the warrant. Upon entry the police observed the stolen television set in plain sight. I therefore agree with the conclusion of the trial court and the unanimous Court of Appeal, which affirmed the judgment.

Defendant admits the police possessed a valid arrest warrant when they entered his house. He attempts to avoid the consequences of this concession, however, by asserting that the police "did not utilize the warrant" to gain

---

of whether consent to enter has been given by someone authorized to give it. If there are no exigent circumstances, the police must obtain a search warrant if they wish to conduct a non-consensual search of a suspect's home at a time when they are unable to execute the arrest warrant.

[9] Our conclusion that an entry based on Gretchen's consent violated section 844 makes it unnecessary to discuss defendant's additional claims that her consent was involuntary (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 248-249 [36 L.Ed.2d 854, 875, 93 S.Ct. 2041]; *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 550 [20 L.Ed.2d 797, 803, 88 S.Ct. 1788]; *People* v. *Jennings, supra,* 142 Cal.App.2d at p. 167), that it was invalid because it was given after the police entered (*People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]), and that the police failed to explain the purpose for which they desired admittance (*Greven* v. *Superior Court, supra,* 71 Cal.2d at pp. 291-293; *People* v. *Marshall* (1968) 69 Cal.2d 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Rosales, supra,* 68 Cal.2d at p. 302; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116], cert. den. 389 U.S. 1006 [19 L.Ed.2d 604, 88 S.Ct. 568]; *People* v. *Martin* (1955) 45 Cal.2d 755, 762-763 [290 P.2d 855]).

entry. The facts are otherwise. The police obtained the warrant that morning and carried it with them to the house; there they attempted to find defendant so that they could serve the warrant. It thus seems clear that the police made use of the warrant to serve defendant at his own home where he was most likely to be. Moreover, the prosecutor took the position at the suppression hearing that the entry was based on the warrant, and this position was reaffirmed by the Attorney General. Such an entry under color of warrant complies with constitutional requirements. In my view, consent is not an issue.

Defendant's second contention is that the entry was unlawful because it was in violation of section 844. This statute authorizes the police to break open the door or window of a house to effect an arrest, but requires that before doing so they (1) knock or utilize some other means reasonably calculated to alert the occupants to their presence, (2) identify themselves as police officers, and (3) explain their purpose in seeking admittance. (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 319 [82 Cal.Rptr. 348, 461 P.2d 628].)

The police substantially complied with section 844 by knocking, identifying themselves, and asking to be admitted into the house to search for defendant. The purpose of the proposed search, however, was to arrest defendant, and the police did not explain this before entering. Thus, they did not fully comply with the statute. (*People* v. *Rosales* (1968) 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489].) The issue, then, is whether the police conduct, which fell short of a full disclosure of purpose, nevertheless complied with the requirements and purposes of the knock-notice statute.

The law is clear that substantial compliance with the statute is generally sufficient. (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 291 [78 Cal.Rptr. 504, 455 P.2d 432].) Substantial compliance has been defined as actual compliance with every reasonable objective of a statute; it overlooks mere technical imperfections of form. (*Stasher* v. *Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649].) In *People* v. *Peterson* (1973) 9 Cal.3d 717, 723 [108 Cal.Rptr. 835, 511 P.2d 1187], we declared that "[w]hen police procedures fail to conform to the precise demands of the statute but nevertheless serve its policies we have deemed that there has been such substantial compliance that technical and, in the particular circumstances, insignificant defaults may be ignored."

In *Duke* v. *Superior Court, supra,* 1 Cal.3d at page 321, Justice Tobriner noted for the majority that "The purposes and policies underlying section 844 are fourfold: (1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the preven-

tion of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder." In my dissent in that case (at p. 325) I agreed that section 844 serves a salutary purpose and should be followed. I observed that "There are undoubtedly a number of punctured bodies occupying cemetery plots today because defenders of their own castles were unable to distinguish between unidentified law enforcement officers and unauthorized intruders."

In this instance, the police conduct served all the foregoing policies. Three of the *Duke* concerns, which may be summarized as prevention of violence to person or property due to unannounced intrusions, are not implicated here, where the knock on the door was actually answered by an occupant, the police identified themselves, and the occupant was asked to lead the police through the house. There is no reason to conclude that these purposes would have been further served had the officers more fully complied with section 844 by stating the purpose of their visit.

The remaining goal of the statute, to protect an occupant's privacy interest, was also satisfied by the police conduct in this case. First, they obtained a warrant; its very existence necessarily casts some limitations on an individual's right of privacy. Second, defendant's home was not suddenly or violently invaded; the police knocked on the door and politely requested admittance. Finally, the police were peaceably admitted; thus there was no danger of "unexpected exposure of private activities." (*United States* v. *Bustamante-Gamez* (9th Cir. 1973) 488 F.2d 4, 12.)

I therefore conclude that under the circumstances of this case there was substantial compliance with section 844. Once properly inside the home, the police could not avoid noticing the stolen television set in plain sight. They were justified in seizing it, and the trial court properly admitted the set in evidence.

I would affirm the judgment of the Court of Appeal.

Lucas, J., and Panelli, J., concurred.

Respondent's petition for a rehearing was denied February 26, 1987.