Opinion
 

 BARON, J.
 

 Appellant Cenovia Santiago was convicted of six counts of corporal injury to a child in violation of Penal Code section 273d. The evidence against appellant consisted of the testimony of the 12-year-old victim, appellant’s pretrial admissions to police, medical records of the
 
 *1542
 
 victim, and the instruments by which some of the injuries were inflicted, including a belt, pliers, spoon, rock, and extension cord. The instruments were obtained from appellant’s residence pursuant to consent given by the victim when she was just under 12 years old.
 
 [1]
 
 The only issues raised in this appeal concern the legality of police entry into appellant’s home and their recovery of the instruments. For reasons explained in this opinion, we affirm the judgment.
 

 Factual Summary
 

 The evidence, briefly recounted in the light most favorable to the verdict, proved that in 1992 appellant brought her 10-year-old niece Carla from Mexico to her home for the purpose of having her learn English, attend school and babysit appellant’s daughter. Carla never attended school. Instead, she cleaned appellant’s house and babysat, initially for one child and later two, five days a week from 7 a.m. to 3 p.m. Carla worked for appellant for approximately 18 months. During the last 12 months, appellant hit Carla with her hands, an extension cord, a belt, a hammer, and a rock. Appellant also pulled Carla’s ears, cut Carla with a knife, burned Carla with a spoon which she heated on the stove, pinched Carla’s fingers with a pair of pliers, and dragged Carla back into the house when she tried to run away, hitting Carla’s head against the door frame.
 

 This abuse ended on June 19, 1994, when Carla left appellant’s house early in the morning and knocked on a neighbor’s door in search of work. The neighbor called police. When police responded, they noticed Carla had a black eye, marks on her arms, and swollen fingers which were unable to bend. They took Carla to the station, where she was interviewed. Female officers examined Carla’s body and reported that she had bruises and scarring on her back which appeared to have been made by a belt.
 

 The evidence received during the hearing on appellant’s motion to suppress, and the inferences reasonably supported by the evidence, proved that after Carla was interviewed at the police station, officers went to appellant’s home in three or four police vehicles for the purpose of arresting appellant. Carla was in one of the vehicles. Three officers, including Officer Reynaldo Perez, knocked on appellant’s door. Officer Perez informed appellant in Spanish that they were there to ask questions about Carla’s whereabouts. It was his intent to determine whether appellant was Carla’s guardian. Appellant invited the officers into the apartment. They entered three to four feet into the living room area, where appellant was attending to her two children.
 
 *1543
 
 Appellant said Carla’s natural parents were in Mexico. She also told police she did not know where Carla was, but that Carla was upset and had left. While appellant was being placed under arrest, Carla was summoned to the residence. She identified appellant as the person who abused her. Appellant was taken from the apartment.
 

 Officer Perez and a female officer remained in the apartment with Carla and the two young children.
 
 [2]
 
 Officer Perez asked Carla if “we could search the house” for the items she had mentioned in her interview. Carla said yes, and began walking toward the bathroom. Officer Perez followed Carla through the small apartment. Carla retrieved and handed to the officer the instruments with which appellant had abused her, including a pair of pliers from the bathroom, a spoon and a grinding stone from the kitchen, a belt from a hook in the hallway, and an extension cord from the living room. None of the items was hidden, and none was found within a private area such as a locked box or bureau drawers.
 

 Discussion
 

 Appellant contends the trial court erred in denying her motion to suppress the evidence found in her home. She argues that Carla had no authority to grant permission to search, and that it was unreasonable for police to believe Carla had authority to consent because: (1) police knew appellant possessed a superior privacy interest in the residence, but failed to request appellant’s consent to search; (2) Carla was too young to give valid consent to search appellant’s home, and her status as victim of the crime did not change that fact; (3) neither the need to secure the welfare of appellant’s two young children nor the suspected abuse of Carla constituted exigent circumstances justifying the search.
 

 In
 
 People
 
 v.
 
 Jacobs
 
 (1987) 43 Cal.3d 472 [233 Cal.Rptr. 323, 729 P.2d 757], the California Supreme Court held that the evidence did not support a finding that an 11-year-old girl had actual or apparent authority to permit police to survey the rooms of her stepfather’s house in an ostensible effort to serve a warrant of arrest on him. The court reasoned: “First, the record shows the officers entered the house before they discovered Gretchen was babysitting. Gretchen’s role as babysitter is therefore irrelevant to whether she exhibited authority to permit the entry. Second, the fact that Gretchen’s parents had entrusted her with the care of children two and five years of age cannot alone support a finding that the eleven-year-old child had actual authority to permit adult strangers to enter and search the home. Minor
 
 *1544
 
 children, even those who live in Fairfax, California, do not have coequal dominion over the family home. . . . [Citation.] Although parents may choose to grant their minor children joint access and mutual use of the home, parents normally retain control of the home as well as the power to rescind the authority they have given. ... [*10 Other courts that have considered the authority, or capacity, of a minor child to consent to a police entry of the family home generally have refused to uphold the admissibility of evidence found therein in a criminal action against the parent. The reasoning of these cases is sound: a child cannot waive the privacy rights of her parents.”
 
 {Id.
 
 at pp. 481-482, fn. omitted.)
 

 The
 
 Jacobs
 
 court admonished, however, that its opinion should not be read to suggest that consent by a minor is ineffective in all cases in which no adult occupant is present. The court explained: “As a child advances in age she acquires greater discretion to admit visitors on her own authority. In some circumstances, a teenager may possess sufficient authority to allow the police to enter and look about common areas. [Citation.] Exceptional circumstances also may justify a search that otherwise would be illegal. For example, some [out-of-state] courts have upheld searches made at the request of a child or when a child is the victim of or a witness to a crime. We do not here explore the exceptions to the general rule we announce today.” (43 Cal.3d at p. 483, fn. omitted.)
 

 It appears that the case before us falls within one or more of the exceptions to the general rule announced in
 
 Jacobs.
 
 Carla was not appellant’s ward, although appellant purported to undertake her care and education; she worked for appellant. Her duties involved more than occasional babysitting; she was in charge of the household approximately 40 hours per week, albeit as a servant. More importantly, Carla initiated the events which led to the investigation. Thus, there is no suggestion that her consent to search resulted from submission to police authority. Nor was the search particularly intrusive. We note that appellant, herself, initially invited the officers into her living room. Officer Perez simply followed Carla from that room to others in the small apartment and took possession of the items she handed to him. Under these circumstances, we conclude Carla’s consent to search was valid. Given this conclusion, we need not discuss appellant’s contention that appellant had a privacy interest superior to Carla’s that would invalidate Carla’s consent.
 
 (People
 
 v.
 
 Clark
 
 (1993) 5 Cal.4th 950, 980 [22 Cal.Rptr.2d 689, 857 P.2d 1099].)
 

 Even if we were to conclude otherwise, an alternative ground exists in this case for affirmance of the judgment. The evidence of appellant’s guilt was so overwhelming that any alleged error was harmless beyond a reasonable
 
 *1545
 
 doubt.
 
 (People
 
 v.
 
 Memro
 
 (1995) 11 Cal.4th 786, 847 [47 Cal.Rptr.2d 219, 905 P.2d 1305].) Carla’s accusations were corroborated not only by the bruises and marks on her body, but by appellant’s own admissions to police. Apparently believing her violence toward Carla was justified by Carla’s ineptitude as a housekeeper and babysitter, appellant admitted to police that she hit Carla with her hands, with a belt, with an extension cord, and with a rock. She also admitted that she burned Carla with a hot spoon, pinched her fingers with a pair of pliers, and gave her a black eye when she was dragging Carla into the apartment. These admissions so closely paralleled Carla’s testimony that they undoubtedly also corroborated her credibility. Thus, contrary to appellant’s contention, the jury’s viewing of the tools by which appellant accomplished her abuse of Carla was not crucial to the prosecution’s case.
 

 For the foregoing reasons, the judgment is affirmed.
 

 Vogel (C. S.), P. J., and Epstein, J., concurred.
 

 A petition for a rehearing was denied July 8, 1997, and on July 25, 1997, the opinion was modified to read as printed above. Appellant’s petition for review by the Supreme Court was denied October 15,1997. Mosk, J., was of the opinion that the petition should be granted.
 

 [1]
 

 The victim told police officers she was 12 at the time of the search. Based upon her trial testimony, it appears that she was actually 11 years, 9 months and 3 weeks old at that time.
 

 [2]
 

 Appellant’s husband lived in the apartment, but was not present at the time of appellant’s arrest. The children were taken into protective custody.