LUCERO, J.,
concurring.
I concur in the majority opinion because our precedent and the somewhat unusual facts presented compel its reasoning and result. I write separately, however, to state my dismay that we apply third-party consent rules designed for adult relationships to relationships involving children. A child is not a roommate; our third-party consent doctrine should recognize this fact.
I
In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court held that “the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.” Id. at 170, 94 S.Ct. 988. This “third-party consent” doctrine depends not
upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Id. at 171 n. 7, 94 S.Ct. 988 (citations omitted).
Our circuit has crafted a two-part, disjunctive test for applying Matlock: “[A] third party has authority to consent to a search of property if that third party has either (1) mutual use of the property by *693 virtue of joint access, or (2) control for most purposes over it.” United States v. Rith, 164 F.3d 1323, 1329 (10th Cir.1999). The first prong can be satisfied by showing that “the third party entered the premises or room at will, without the consent of the subject of the search.” United States v. Cos, 498 F.3d 1115, 1125 (10th Cir.2007) (quotation omitted). This is a “fact-intensive inquiry.” Id. The second prong is “a normative inquiry dependent upon whether the relationship between the defendant and the third party is the type which creates a presumption of control for most purposes over the property by the third party.” Rith, 164 F.3d at 1330.
In addition, a third party may possess apparent authority to permit entry even if she lacks actual authority. “[A] third party has apparent authority if the officer has a reasonable belief that the third party has (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it.” Cos, 498 F.3d at 1128 (quotation omitted). “Importantly, where an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent.” Id. (quotation omitted).
This framework serves us well when we consider whether an adult may consent to the search of premises he or she shares with another adult, but the rationale for Matlock should lead us to conclude in many instances that a minor child in a parent’s home lacks both actual and apparent authority to similarly consent. The Supreme Court discussed the basis for Matlock at some length in Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), an opinion addressing whether police may enter and search a home when one co-occupant consents to a search, but another present co-occupant expressly refuses. It explained that Mat-lock rests on a theory of “assumption of risk.” Randolph, 547 U.S. at 111, 126 S.Ct. 1515. In most co-occupant relationships, roommates “understand that any one of them may admit visitors, with the consequence that a guest obnoxious to one may nevertheless be admitted in his absence by another.” Id.[1] Just as a co-occupant might invite a member of the general public into a home, despite an absent roommate’s objection, an adult who enters into a shared living arrangement assumes the risk that a co-occupant will permit police entry. In other words, Mat-lock rests in part upon the general rule that we treat police officers like other members of the public when they are not exercising powers unique to law enforcement. See California v. Greenwood, 486 U.S. 35, 40-41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (police do not need a warrant to search garbage bags left on the street for trash collection); California v. Ciraolo, 476 U.S. 207, 213-14, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (no warrant needed to fly over back yard because “[a]ny member of the public flying in this airspace who glanced down could have seen everything that these officers observed”); Texas v. Brown, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (police may look under a vehicle parked on the street because “there is no reason [police] should be precluded from observing as an officer what would be entirely visible to him as a private citizen”).
In Randolph, the Court relied extensively on this ordinary citizen analogy. *694 Holding that police may not enter at the invitation of one co-occupant when another present co-occupant objects, the Court reasoned:
[I]t is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant’s invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, “stay out.” Without some very good reason, no sensible person would go inside under those conditions.
Randolph, 547 U.S. at 113, 126 S.Ct. 1515. Thus, in assessing whether third-party consent to a police search is effective, we must consider whether an ordinary citizen would be permitted entry under the common understanding of a consenter’s authority.
But the Matlock reasoning breaks down when applied to consenting minor children. The common understanding of an adult co-occupant’s authority stands in stark contrast to that of a child. Although we would expect a roommate to be free to invite whatever guests she chooses into the shared home, we cannot apply that presumption for most minor children. That is, one normally assumes that a minor child is not allowed to invite guests into the home absent a parent’s approval.
The two-part Rith test, derived from language used in Matlock, does not mesh well with this reality. Although one may sensibly presume that an adult who has “mutual use of the property by virtue of joint access” also possesses authority to invite callers into the home, Rith, 164 F.3d at 1329, the same is not true of minor children. An occupant’s young children will frequently have joint access to a home but will only rarely be given free range to invite guests. Similarly, children have “control for most purposes” over their parent’s home, id., in that they may often find themselves home alone and thus “in charge.” Nonetheless, their authority over the home is dependent upon and limited by a parental grant of responsibility. The assumption we permit police to make — -that a co-occupant has authority to permit entry of a guest when she has joint access to or control for most purposes over a home — does not hold water when the consenting co-occupant is a minor child.
II
The Supreme Court appears to have recognized that children should not be treated like adults in the third-party consent context. It noted in Randolph that most co-occupant disputes must be resolved “through voluntary accommodation, not by appeals to authority,” but acknowledged that some shared living arrangements, “like a household of parent and child,” fell outside the general rule. 547 U.S. at 114, 126 S.Ct. 1515. The Court further stated that the common understanding of a roommate’s authority to permit entry into common areas of a home does not necessarily extend to every nook and cranny of the shared residence:
[WJhen it comes to searching through bureau drawers, there will be instances in which even a person clearly belonging on premises as an occupant may lack any perceived authority to consent; a child of eight might well be considered to have the power to consent to the police crossing the threshold into that part of the house where any caller, such as a pollster or salesman, might well be admitted, but no one would reasonably expect such a child to be in a position to authorize anyone to rummage through his parents’ bedroom.
Id. at 112, 126 S.Ct. 1515 (quotation and citation omitted).
Despite this recognition, several circuits, including our own, have used the Matlock *695 framework to determine whether minor children can provide third-party consent. In United States v. Gutierrez-Hermosillo, 142 F.3d 1225 (10th Cir.1998), we applied Matlock and its progeny in holding that a fourteen-year-old could validly consent to police entry into a motel room that she and her father occupied. Id. at 1230-31. We held that “minority does not, per se, bar a finding of actual authority to grant third-party consent to entry,” and that the daughter’s “mutual use of the motel room” gave rise to a reasonable assumption that she had actual authority to permit police entry. Id. at 1231. Although we recognized that a child’s age “is a factor in determining the voluntariness of her consent,” id., we did not factor it into the actual or apparent authority inquiry.[2]
The majority opinion dutifully applies this precedent, and I therefore concur. But in my view Gutierrez-Hermosillo was wrongly decided. It was based in part on Lenz v. Winbum, 51 F.3d 1540 (11th Cir.1995), an Eleventh Circuit opinion that directly addressed whether minors can provide third-party consent. Our sister circuit provided four reasons for its affirmative answer:
First, privacy is an intuitive interest, and legal sophistication is not required even for adults to give valid consent. Hence, minors need not necessarily be presumed incapable of knowing consent. Second, the list of factual considerations bearing upon the voluntariness of the consent is open-ended. The youth of the consenter, with its attendant vulnerability to coercion, is certainly among them. This individualized assessment obviates the need for a categorical rule to protect subjects of searches from subtle coercive tactics to secure a minor’s consent. Third, consent searches serve a legitimate purpose that is properly balanced against the cost of limiting a minor’s ability to consent. This balancing counsels against a bright-line rule prohibiting minor consent. Finally, the rationale behind third-party consent involves no notion of agency. Rather, the third-party consent rule recognizes that sharing space with another lessens the expectation of privacy in that space. This compromise of the expectation of privacy is no less the case for a minor co-occupant than for an adult.
Id. at 1548-49 (citations omitted). The first three bases elide the issue, and the fourth is simply incorrect.
The first two rationales discuss whether children have the capacity to voluntarily consent, which does not meaningfully inform the question of whether Matlock is the appropriate framework through which to evaluate third-party consent provided by a minor. Certainly a teenager can consent to the search of her person or her property in some instances, but that does not answer the question of whether the child has the authority to consent to a search of her parents’ home or her parents’ property. The third justification is nothing more than a statement that consent searches serve a legitimate purpose; *696 again, this touches only tangentially on the propriety of extending Matlock to minors.
Only the fourth reason engages the grounding of the third-party-consent rule, but it does so incorrectly. Lenz properly notes that Matlock does not rest upon a theory of permission, stating that the third-party consent doctrine “involves no notion of agency.” 51 F.3d at 1549. We do not ask whether the absent co-occupant has given permission to a present co-oceupant to consent to a search. But Lenz then turns astray.
First, Lenz misconstrues the central underpinning of Matlock: the conclusion that, when a co-occupant has “joint access or control for most purposes,” then “it is reasonable to recognize that” the co-occupant “has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.” Matlock, 415 U.S. at 171, 94 S.Ct. 988. n. 7. The Matlock rule is thus based on a factual conclusion: When an adult has joint access or control over a dwelling for most purposes, she almost always has the authority to permit callers — including police officers — to enter the home. This conclusion does not follow when the third-party consenter is a minor child: Children do not generally possess authority to permit guests simply because they have joint access to the family home. Lenz misses this point entirely. Rather than examining whether Matlock’s reliance “on what was usual,” Randolph, 547 U.S. at 112, 126 S.Ct. 1515, among adult cohabitants holds true when the consenter is a child, Lenz instead broadly states that individuals in shared living arrangements suffer a reduced expectation of privacy, and simply concludes this diminution is “no less the case for a minor co-occupant than for an adult,” 51 F.3d at 1549.
What a strange conclusion: a parent surrenders a portion of her Fourth Amendment rights simply by bearing and raising a child. This startling assertion is wholly unsupported. Further, under this rule of law, parents would be forced to install deadbolts on their bedroom door in order to protect their privacy against consent granted by their minor children, as the district court implied below.
More fundamentally, Lenz misreads the justification for the third-party consent rule. Matlock is not based on a reduced expectation of privacy on the part of the absent co-tenant; it is based on the present co-tenant’s independent authority (actual or apparent) to consent to a search. See Illinois v. Rodriguez, 497 U.S. 177, 186 n. *, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (rejecting as “strange in the extreme” Justice Marshall’s dissent, which interpreted the third-party-consent doctrine as based on a reduced expectation of privacy rationale).
Sadly, the Sixth Circuit has joined us in adopting Lenz’s faulty logic. See United States v. Clutter, 914 F.2d 775, 777-78 (6th Cir.1990). State courts have not been as willing. The California Supreme Court rejected a mechanistic application of Matlock in considering whether an eleven-year-old child’s consent to a police search of her parents’ home was valid. People v. Jacobs, 43 Cal.3d 472, 233 Cal.Rptr. 323, 729 P.2d 757, 762-63 (1987). The Jacobs court appropriately looked to the basis of the third-party consent doctrine and to the practical reality that children present unique considerations:
Minor children ... do not have coequal dominion over the family home. Although parents may choose to grant their minor children joint access and mutual use of the home, parents normally retain control of the home as well as the power to rescind the authority they *697 have given. It does not startle us that a parent’s consent to a search of the living room in the absence of his minor child is given effect; but we should not allow the police to rely on the consent of the child to bind the parent. The common sense of the matter is that the parent has not surrendered his privacy of place in the living room to the discretion of the child; rather, the latter has privacy of place there in the discretion of the former.
Id. at 763 (citation, quotation, and alterations omitted, emphasis added). The court held that third-party consent is ineffective unless police show that the “mutual use [is] such ‘that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.’ ” Id. at 762 (quoting Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. 988). Applying this rule, the court concluded that the eleven-year-old did not have actual or apparent authority to consent to the search. Id. at 763.
Other state courts have reached similar conclusions. In Commonwealth v. Garcia, 478 Pa. 406, 387 A.2d 46 (1978), the Supreme Court of Pennsylvania recognized the importance of minority in evaluating the validity of third-party consent. Noting that a “third party with insufficient dominion over the premises may not consent to a search thereof,” the court interpreted the doctrine as centering “around whether that third party had co-equal dominion and control over the area or property to be searched.” Id. at 55 (citing Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), and Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964)). As applied to a child, the court reasoned that a sixteen-year-old “did not have dominion over the home equal to that of appellant. The appellant had the power to determine the extent of her daughter’s authority to admit people to the house and therefore [the daughter’s] consent was ineffective.” Garcia, 387 A.2d at 55.
The Georgia courts have established a four-part test to determine whether a child may consent to a search of the familial home; they consider “whether the minor lived on the premises; whether the minor had a right of access to the premises and the right to invite others thereto; whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion; and whether officers acted reasonably in believing that the minor had sufficient control over the premises to give a valid consent to search.” Atkins v. State, 173 Ga.App. 9, 325 S.E.2d 388, 390 (1984), aff'd, 254 Ga. 641, 331 S.E.2d 597, 599 (1985); see also Davis v. State, 262 Ga. 578, 422 S.E.2d 546, 549 (1992) (holding that, under the four-part test, a ten-year-old child home alone for ninety minutes “had no right, absent an emergency, to invite anyone into the house while he was alone there, much less into his parents’ bedroom” (emphasis omitted)).
These cases recognize that the central assumption of Matlock falters when applied to children. Because most children, and especially most young children, lack the authority to invite guests into the home without their parents’ permission, in most circumstances police should not be permitted to rely on a child’s consent to search a home. Like the Georgia courts, I would not impose a per se ban on third-party consent from a minor. Although some children are obviously too young to invite guests into the home, some teenagers might be granted something akin to coequal dominion over a home. But the default assumption when a minor answers the door should be that the child lacks *698 authority to consent to a home search. Only when the government can demonstrate that a specific minor actually has parental permission to allow guests into the home would the third-party consent doctrine condone the search. I would not credit a police assumption that a minor has authority to provide third-party consent when the officer failed to inquire. See Cos, 498 F.3d at 1128 (“[W]here an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent.” (quotation omitted)).
Applying a presumption that children lack the authority to consent to a search of the parental home would provide the proper incentives to law enforcement personnel. Few would doubt that children are more susceptible than adults to coercion and concomitantly less likely to stand up to a law enforcement official to assert their Fourth Amendment rights. Cf. United States v. Elkins, 300 F.3d 638, 647 (6th Cir.2002) (“Several factors should be examined to determine whether consent is valid, including the age, intelligence, and education of the individual .... ” (emphasis added, quotation omitted)). Recognizing this fact, police lacking probable cause but desirous of searching a dwelling might target a time they know children would be home alone, in an attempt to gains consent to search. Such a practice is to be strongly discouraged. Imagine, for example, police waiting until a suspect leaves home for work to approach the suspect’s child and request entry into the home. The very notion is repulsive, yet our current precedent encourages similar tactics.
Ill
As noted supra, I concur despite my disagreement with Gutierrez-Hermosillo because the majority properly applies Tenth Circuit precedent. Under a more sensible application of the Matlock test, however, it is not clear that this case would be decided differently: The district court credited testimony from A.L., Victor Sanchez’s fifteen-year-old daughter, that she had “no restrictions on [her] behavior in the home at all.” A.L. also testified that her father told her every morning (except the morning of the day at issue) not to open the door for strangers, but the district court apparently rejected this testimony as not credible. These factual findings may be sufficient to support a determination of actual authority on A.L.’s part, but because Matlock is applied to children in our circuit, we do not conduct the pertinent analysis.

. The Court recognized the possibility that a given set of idiosyncratic roommates might "make an exceptional arrangement that no one could admit a guest without the agreement of all,” but held that "the chance of such an eccentric scheme is too remote to expect visitors to investigate a particular household’s rules before accepting an invitation to come in.” Id. at 111-12, 126 S.Ct. 1515.

. We also stated in Rith that the "parent-child relationships and husband-wife relationships" give "rise to a presumption of control of property.” 164 F.3d at 1330. However, Rith itself and the cases we cited in support of this proposition concerned a parent's authority to consent to a search of a child's room. See United States v. Ladell, 127 F.3d 622, 624 (7th Cir.1997); United States v. DiPrima, 472 F.2d 550, 551 (1st Cir.1973). I do not read Rith to presume that a child has control of her parents' property. This construction is supported by Rith itself, in which we quote DiPrima's statement that "[ejven if a minor child, living in the bosom of a family, may think of a room as 'his,' the overall dominance will be in his parents.” Rith, 164 F.3d at 1330 (quoting DiPrima, 472 F.2d at 551).